**In re David L. KENNEDY and Kathy S. Kennedy.**

**In re John O. NICHOLAS and Barbara Nicholas.**

**Locke D. BARKLEY, Trustee for the Estate of David L. Kennedy and Kathy S. Kennedy, Movants,**

**v.**

**TOWER LOAN OF MISSISSIPPI, INC., Respondent.**

**John O. NICHOLAS and Barbara Nicholas, Movants,**

**v.**

**TOWER LOAN OF MISSISSIPPI, INC., Respondent.**

**Bankruptcy Nos. 91–43526, 91–43766.**

United States Bankruptcy Court, N.D. Mississippi.

March 27, 1992.

William J. Clayton, Batesville, Miss., for David L. Kennedy and Kathy S. Kennedy.

Joe D. Pegram, Oxford, Miss., for John O. Nicholas and Barbara Nicholas.

Harold J. Barkley, Jr., Jackson, Miss., for Locke D. Barkley, trustee.

Richard J. Rohman, Bridgeforth, Love, Norquist and Rohman, Yazoo City, Miss., William J. Lutz and Patrick F. McAllister, Jackson, Miss., for Tower Loan of Mississippi, Inc.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court are the following:

1. Motion to avoid a nonpossessory, nonpurchase-money security interest filed by Locke D. Barkley, Trustee for the Estate of David L. Kennedy and Kathy S. Kennedy, debtors, against Tower Loan of Mississippi, Inc.; the request of the debtors to join as parties to the trustee's motion; responses to the motion and the request for joinder filed by Tower Loan of Mississippi, Inc.

2. Motion to avoid a nonpossessory, nonpurchase-money security interest filed by John O. Nicholas and Barbara Nicholas,

debtors, against Tower Loan of Mississippi, Inc.; response to said motion filed by Tower Loan of Mississippi, Inc.

The court having heard and considered same, hereby finds as follows:

## I.

The court has jurisdiction of the subject matter of and the parties to these proceedings pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. These contested matters are core proceedings as defined in 28 U.S.C. § 157(b)(2)(A), (B), and (K).

## II.

This opinion will address the following two issues:

1. Whether the Chapter 13 trustee has standing to file a motion, pursuant to 11 U.S.C. § 522(f)(2), seeking to avoid a nonpossessory, nonpurchase-money security interest that impairs an exemption to which the debtor is entitled.

2. Whether a debtor in Mississippi may now utilize 11 U.S.C. § 522(f)(2), to avoid a voluntary nonpurchase-money security interest that impairs an exemption to which that debtor would be entitled but for the exclusionary language of § 85-3-1(d), Mississippi Code Annotated.

(All Code sections set forth hereinbelow should be considered as Title 11, U.S.Code, unless specifically noted otherwise. Mississippi Code Annotated will be abbreviated as MCA.)

## III.

### DISCUSSION OF ISSUE 1.

■ This issue has diminished in significance since the debtors have chosen to join as parties to the trustee's motion. Therefore, the trustee is no longer exclusively prosecuting the motion to avoid Tower Loan's security interest. The issue needs to be addressed, however, since the court overruled the objection of Tower Loan to the debtors' request for joinder, as well as, the initial objection of Tower Loan to the trustee's standing to file and prosecute a § 522(f) lien avoidance motion.

In taking the position that the trustee has no standing to file a motion seeking to avoid a secured creditor's lien pursuant to § 522(f)(2), Tower Loan cites the case of *In re Ciavarella*, 28 B.R. 823 (Bankr.S.D.N.Y. 1983). That decision is distinguishable from the subject proceeding because there the trustee was taking action that was inconsistent with the debtor's wishes. Here, the facts are totally different; the debtors are agreeable to the course of action pursued by the trustee, and, indeed, have joined in the trustee's motion.

Clearly, the language of § 522(f), as pointed out by counsel for Tower Loan, indicates that the debtor is the designated entity to pursue a motion to avoid a security interest under that section. Nowhere is the trustee mentioned. Seeking guidance as to whether the trustee should be able to prosecute such a motion, standing alone, the court has looked to the various Bankruptcy Code sections mentioned in the parties' memoranda.

The first section is § 1302(b)(1)[1], which provides that the trustee shall perform those duties enumerated in § 704[2], except § 704(1) and (8).

1. (b) The trustee shall—
   (1) perform the duties specified in sections 704(2), 704(3), 704(4), 704(5), 704(6), 704(7), and 704(9) of this title

2. The trustee shall—
   (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;
   (2) be accountable for all property received;
   (3) ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title;
   (4) investigate the financial affairs of the debtor;
   (5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;
   (6) if advisable, oppose the discharge of the debtor;
   (7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest;
   (8) if the business of the debtor is authorized to be operated, file with the court, *with the United States trustee,* and with any govern-

Section 1302(b)(2) [3] says that the trustee, among other listed responsibilities, shall have standing to participate at any hearing concerning the confirmation of a plan. Although the trustee's motion to avoid Tower Loan's security interest is not directly a part of a confirmation hearing, the purpose of the motion directly affects the confirmation processes, particularly the manner in which the trustee will distribute the plan payments to the estate's creditors.

Section 704(5) provides that the trustee shall, if a purpose would be served, examine proofs of claim and object to the allowance of any claim that is improper. Through the motion to avoid the security interest of Tower Loan, the trustee is essentially objecting to Tower Loan's claim, asserting that the claim is improper, i.e., that by virtue of bankruptcy law Tower Loan's claim is an unsecured claim as opposed to being a secured claim.

The court next looks to § 1322(a)(3), which provides that a Chapter 13 plan shall, if the plan classifies claims, provide the same treatment for each claim within a particular class. This section does not say that the trustee has "watchdog" responsibilities in this area, but certainly if a claim by law should be treated as an unsecured claim and, in actuality, is being treated as a secured claim, the trustee should have an intrinsic right to object to this treatment. It is extremely important to recognize that a debtor may have little or no motivation to file a motion to avoid a nonpurchase-money security interest. Because of the disposable income test found in § 1325(b) [4], the monies, that would otherwise be paid to the secured creditor which are released as a result of the avoided lien, are not retained by the debtor, but are made available to the trustee for distribution to all of the debtor's unsecured creditors. Common logic and simple fairness dictate that the trustee should have standing to present such an issue to the court for adjudication.

In none of the sections that have been mentioned is there limiting language concerning the duties of a Chapter 13 trustee as compared to the duties of a Chapter 7 trustee. Although *Ciavarella, supra,* implies that there is a distinction, the opinion also mentions other cases which hold to the contrary. *See, In re Johnson,* 26 B.R. 381 (Bankr.D.Colo.1982) and *In re Colandrea,* 17 B.R. 568 (Bankr.D.Md.1982).

Finding no limiting language, the court next looks to § 544(a)(1) [5], which provides

---

mental unit charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as *the United States trustee or* the court requires; and

(9) make a final report and file a final account of the administration of the estate with the court *and with the United States trustee.*

3. (2) appear and be heard at any hearing that concerns—
   (A) the value of property subject to a lien;
   (B) confirmation of a plan; or
   (C) modification of the plan after confirmation;

4. (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
   (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
   (B) the plan provides that all of the debtor's projected disposable income to be received in

the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—
   (A) for the maintenance or support of the debtor or a dependent of the debtor; and
   (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

5. (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
   (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

that the trustee shall have, as of the commencement of the case, the power to avoid any transfer of property of the debtor or any obligation incurred by the debtor that is avoidable by a creditor who holds a judicial lien on all of the debtor's property. This is one of the trustee's hypothetical "strong arm" avoiding powers, the purpose of which appears to be applicable to this proceeding. The court reasons that if the trustee could assert a lien position under § 544(a)(1), that the trustee, therefore, has standing to attempt to avoid a pre-existing competing lien utilizing the authority of either § 522(f)(1) or (2).

For all of the above reasons, the court finds that Tower Loan's objection to the debtors' joinder, as well as, its objection to the trustee's standing to file and prosecute motions to avoid liens under § 522(f)(2) is not well taken and will be overruled.

## IV.

### DISCUSSION OF ISSUE 2.

▬ Rather than in footnotes, the relevant statutes, applicable to this issue, are set forth in the text of this opinion as follows:

11 U.S.C. § 522(f) provides as follows: (f) Not withstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

Section 85–3–1, MCA, provides as follows:

There shall be exempt from seizure under execution or attachment:

(a) Tangible personal property of any kind, not exceeding Ten Thousand Dollars ($10,000.00) in value, which shall be selected by the debtor; provided, however, this paragraph shall not apply to distress warrants issued for collection of taxes due the state or to wages described in Section 85–3–4.

(b)(i) The proceeds of insurance on property, real and personal, exempt from execution or attachment, and the proceeds of the sale of such property.

(ii) Income from disability insurance.

(iii) Payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless:

A. Such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

B. Such payment is on account of age or length of service; and

C. Such plan or contract does not qualify under Section 401(a), 403(a), 403(b), 408 or 409 of the Internal Revenue Code of 1954.

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against

whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists [and has perfected such transfer].

(c) All property, real, personal and mixed, for the collection or enforcement of any order or judgment, in whole or in part, issued by any court for civil or criminal contempt of said court; expressly excepted herefrom are such orders or judgments for the payment of alimony, separate maintenance and child support actions.

(d) Nothing in this section shall in any way affect the rights or remedies of the holder or owner of a statutory lien or voluntary security interest. (underling added)

The State of Mississippi has elected to "opt-out" of the federal exemptions scheme, set forth in § 522(d), through § 85–3–2, MCA, which provides as follows:

In accordance with the provisions of Section 522(b) of the Bankruptcy Reform Act of 1978, as amended, residents of the State of Mississippi shall not be entitled to the federal exemptions provided in Section 522(d) of the Bankruptcy Reform Act of 1978, as amended. Nothing in this section shall affect the exemptions given to individuals of Mississippi by the Constitution and statutes of the State of Mississippi.

At the hearing, the parties disputed whether certain items of property, pledged as collateral by the debtors to Tower Loan, qualified under the provisions of § 522(f)(2)(A), (B), or (C). These disputes were resolved by the court from the bench and will not be addressed in detail in this opinion.

Insofar as this issue is concerned, the parties stipulated to the following:

1. The security interests in favor of Tower Loan are nonpossessory, nonpurchase-money security interests.

2. Other than the dispute as to whether the property qualified under § 522(f)(2)(A), (B), and (C), which was previously resolved as noted above, the property pledged as collateral was tangible personal property that the debtors would be entitled to claim as exempt but for the lien of Tower Loan, i.e., because of the limiting language of section 85–3–1(d), MCA.

As a result of the stipulation, there are no longer any material factual matters in dispute. This decision, therefore, boils down to the single legal question of whether the recent United States Supreme Court decision of *Owen v. Owen*, 500 U.S. ——, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), has superseded the Fifth Circuit Court of Appeals line of authorities beginning with *In re McManus*, 681 F.2d 353 (5th Cir.1982) and continuing through *In re Fox*, 902 F.2d 411 (5th Cir.1990).

The question can be stated succinctly. Can the debtors now "effectively" claim an exemption in their household goods which are subject to a voluntary nonpurchase-money lien, despite the language of § 85–3–1(d), MCA, and, if so, why can't that lien be avoided? Section 85–3–1(d) states that nothing in the entire exemption section affects in any way the rights or remedies of the holder or owner of a voluntary security interest. The intent of the subsection was to eliminate a person's ability to claim an exemption in such items as household goods if they were subject to a voluntary security interest, regardless of whether that security interest was purchase money or nonpurchase-money. The drafters of the legislation were aware that if an individual were precluded from claiming an exemption, that the ability to utilize § 522(f)(2) of the Bankruptcy Code would be negated, particularly because § 522(f) can be employed to avoid a lien only to the extent that the lien impairs an exemption to which the individual would be entitled.

This court has previously considered and construed the predecessor to subsection 85–3–1(d) in adjudicating motions filed by debtors to avoid nonpossessory, nonpurchase-money security interests. The first decision was *In re Eiland*, 95 B.R. 41 (Bankr.N.D.Miss.1988), where the court held that because of the limiting language of subsection 85–3–1(d), then § 85–3–1(1)(d), MCA, that the debtor was unable to claim an exemption in items of personal property in which she had voluntarily granted a security interest. Following the Fifth Circuit precedents of *In re McManus*, 681 F.2d 353 (5th Cir.1982), *In re Allen*, 725 F.2d 290 (5th Cir.1984), and *In re Bes-*

*sent,* 831 F.2d 82 (5th Cir.1987), the court then concluded that the debtor no longer retained the ability to utilize the lien avoidance power of § 522(f)(2). *See* also, *In re Wolfe,* 51 B.R. 900 (Bankr.W.D.Tex.1985), written by this court while sitting as a visiting judge in the Western District of Texas.

The next decision rendered by this court, following *In re Eiland,* was affirmed by the Fifth Circuit Court of Appeals. *See, In re Fox,* 902 F.2d 411 (5th Cir.1990). Judge Garwood, writing for the panel, stated that once Mississippi opted out of the federal bankruptcy exemption scheme, i.e., § 522(d), Mississippi debtors could exempt only property that was exempt under federal law other than § 522(d), or that was exempt under applicable state law or local law. The Fifth Circuit, consistent with its earlier decisions cited in the preceding paragraph, held that the debtors were unable to avoid a nonpurchase-money security interest as a result of the predecessor to subsection 85–3–1(d) because they no longer were able to claim an exemption in the encumbered property under state law. The following quote from the opinion is insightful, to-wit:

> In keeping with this deference, we adopt the district court's construction of section 85–3–1(1). Both the general provision creating the exemption for tangible personal property and the proviso protecting the rights of secured creditors are subsections of the same provision. The only reasonable construction is that these provisions are to be read in tandem. Subsection (a) describes property that is to be "exempt from seizure under execution or attachment," but subsection (d) provides that this general language does not affect the rights of specified secured creditors. The only relevant right of a secured creditor is the right to seize and execute upon his collateral. The net practical effect of section 85–3–1(1), therefore, is that the exemption created in subsection (a) does not prevent execution and seizure by creditors who hold valid voluntary security interests in the otherwise exempt property.

This construction is supported by the fact that the Mississippi legislature considered and rejected an amendment to section 85–3–1(1) that would have made subsection (d) expressly subject to the section 522(f) avoidance power. The proposal and rejection of an amendment that would have explicitly enacted the construction proposed by the debtors tend to at least slightly indicate that the Mississippi legislature did intend to deny Mississippi debtors access to the section 522(f) avoidance power in cases such as the one now before us.

> Ultimately, we are unable to distinguish for these purposes the statutes that were at issue in *McManus, Allen,* and *Bessent* from the Mississippi statute in the present case. For example, the Louisiana statute discussed in *McManus,* like the statute at issue in the present case, provided a general exemption for household goods and furnishings but included a separate proviso that "a person who has granted a chattel mortgage on [such property] may not thereafter claim an exemption from the seizure of such mortgaged property *for the enforcement of that mortgage.*" *McManus,* 681 F.2d at 356 (emphasis supplied). Similarly, the Texas statute in *Bessent* provided that the property involved was "exempt from attachment, execution, and seizure for the satisfaction of debts, *except for encumbrances fixed on the property,*" and elsewhere that "[t]he exemption ... does not apply to a debt that is secured by a lien on the property...." *Bessent,* 831 F.2d at 83. *See also id. at n. 3.* Thus, under both statutory schemes, the property was exempt from forced seizure *except* to enforce the security interest. In substance, only the debtor's interest in the property in excess of the debt appropriately secured thereby is exempt. That is also the effect of the Mississippi statute in the present case. Thus, we have no choice but to follow *McManus, Allen,* and *Bessent.*

*Fox,* 902 F.2d at 413–14.

Judge Garwood noted that the Court of Appeals was barred from overruling a prior Fifth Circuit decision in the absence of

an en banc reconsideration or a superseding decision of the United States Supreme Court. Therefore, insofar as Mississippi debtors were concerned, *In re Fox* was unambiguous authority that if a debtor had voluntarily granted a security interest in property that would otherwise be exempt, that debtor could not utilize the lien avoidance power found in § 522(f)(2).

The position of the Fifth Circuit, however, was not unanimously accepted by all of the other circuits. See, for example, *In re Hall,* 752 F.2d 582 (11th Cir.1985), and *In re Leonard,* 866 F.2d 335 (10th Cir. 1989).

In *In re Hall,* the Eleventh Circuit stated that the § 522(f) lien avoidance mechanism applied to state exemptions, notwithstanding state limitations on the ability of debtors to exempt lien encumbered property. As such, the Georgia state exemption which allowed a debtor to exempt property only if it were not encumbered by a lien, available exclusively because of Georgia's opt out election, did not preclude the use of § 522(f) to avoid a nonpossessory, nonpurchase-money security interest in the debtor's household goods and furniture. The Eleventh Circuit opinion specifically noted that it disagreed with *In re McManus, supra,* as well as, the Sixth Circuit decision of *In re Pine,* 717 F.2d 281 (6th Cir.1983). Notably, the Eleventh Circuit stated that § 522(f) also applied to Chapter 13 debtors, not just Chapter 7 debtors.

*In re Leonard* held that a debtor could avoid a nonpossessory, nonpurchase-money lien in household goods to the extent that such goods would have been exempt from the claims of creditors under applicable state law, but for the fact that they were encumbered. The Tenth Circuit concluded that states could not circumvent § 522(f) merely by limiting state law exemptions to unencumbered property.

Regardless of the fact that there were conflicting circuit opinions, this court was and is bound to follow the decisions of the Fifth Circuit unless, as pointed out in *In re Fox,* there is a superseding decision rendered by the United States Supreme Court. In the opinion of this court, as well as, in the opinion of numerous bankruptcy commentators and scholars, such a decision was rendered in *Owen v. Owen,* 500 U.S. ——, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). *See,* for example, Keith J. Shapiro, *Supreme Court Decides Two Bankruptcy Cases,* Norton Bankruptcy Law Adviser (Clark Boardman Callaghan, Deerfield, Ill.), July 1991, at 10.

In *Owen,* the debtor acquired a condominium in 1984 which immediately became subject to his former wife's existing judgment lien. In 1985, the Florida legislature expanded the state homestead exemption law. This effectively "opened the door" for the debtor to claim an exemption in his condominium. The Florida state courts held, however, in unrelated cases that the expanded exemption was not applicable to pre-existing liens.

In 1986, the debtor filed bankruptcy and scheduled the judgment debt owed to his former spouse. The condominium was the debtor's primary asset. In two separate holdings, the bankruptcy court found that the judgment debt owed to the former spouse was a dischargeable debt, that is, it was not in the nature of alimony or support, and sustained the debtor's exemption claim in the condominium. The debtor received his discharge and the case was closed. The condominium, however, remained subject to the former wife's judgment lien which had not been attacked during the pendency of the bankruptcy case. On realizing that the lien was still viable, the debtor moved to reopen the bankruptcy case and filed a motion to avoid the lien under § 522(f)(1), not § 522(f)(2). Florida, like Mississippi, had opted out of the federal exemption scheme. As such, only state law exemptions were available to the debtor. The bankruptcy court overruled the debtor's motion in keeping with the Florida state court decisions that had held that the amended condominium exemption was not effective against preexisting judgment liens. The district court and the Eleventh Circuit Court of Appeals affirmed. The Supreme Court, however, in a sweeping decision reversed the lower courts. Justice Scalia, writing for an 8–1 majority, offered

the following comments which are particularly significant to the resolution of the proceedings now before this court, to-wit:

... To determine the application of § 522(f) they ask not whether the lien impairs an exemption to which the debtor is in fact entitled, but whether it impairs an exemption to which he *would have been* entitled but for the lien itself.

As the preceding italicized words suggest, this reading is more consonant with the text of § 522(f)—which establishes as the baseline, against which impairment is to be measured, not an exemption to which the debtor "*is* entitled," but one to which he "*would have been* entitled." The latter phrase denotes a state of affairs that is conceived or hypothetical, rather than actual, and requires the reader to disregard some element of reality. "Would have been" *but for what?* The answer given, with respect to the federal exemptions, has been *but for the lien at issue,* and that seems to us correct. 500 U.S. at —— – ——, 111 S.Ct. at 1836–37, 114 L.Ed.2d at 358–59.

. . . .

We have no doubt, then, that the lower courts' unanimously agreed-upon manner of applying § 522(f) to federal exemptions—ask first whether avoiding the lien would entitle the debtor to an exemption, and if it would, then avoid and recover the lien—is correct. The question then becomes whether a different interpretation should be adopted for State exemptions. We do not see how that could be possible. Nothing in the text of § 522(f) remotely justifies treating the two categories of exemptions differently. The provision refers to the impairment of "exemption[s] to which the debtor would have been entitled under subsection (b)," and that includes federal exemptions and state exemptions alike. . . .
*Id.* at ——, 111 S.Ct. at 1838, 114 L.Ed.2d at 360.

. . . .

On the basis of the analysis we have set forth above with respect to federal exemptions, and in light of the equivalency of treatment accorded to federal

and state exemptions by § 522(f), we conclude that Florida's exclusion of certain liens from the scope of its homestead protection does not achieve a similar result from the Bankruptcy Code's lien avoidance provision.
*Id.*

Although the factual scenario in *Owen* dealt with a judgment lien which can be avoided pursuant to § 522(f)(1), the majority opinion did not limit itself to § 522(f)(1), but rather went to the entire scope of § 522(f). Justice Stevens in his dissent makes this abundantly clear when he states emphatically that the majority's decision adopts the dissenting opinion in *In re McManus, supra,* to-wit:

Although the Court's opinion today resolves the question that was presented in *McManus* by adopting the position of the dissent in *McManus,* I disagree with the Court's reasoning. The Court simply overlooks the fact that for purposes of determining whether a lien is avoidable-rather than for the purpose of determining the extent to which the lien should be avoided-the question whether the debtor "would have been entitled" to an exemption is addressed to the state of affairs that existed at the time the lien attached. 500 U.S. at ——, 111 S.Ct. at 1842, 114 L.Ed.2d at 365.

The court concluded that but for the judgment lien, the debtor's condominium could have been claimed as exempt. Therefore, the lien could potentially be avoided depending upon when it affixed to the debtor's interest in the property. The case was remanded for this determination.

Comparing the Supreme Court's conclusion to the situation at hand dictates the following results: But for the voluntary nonpurchase-money security interests, the debtors could claim exemptions in their tangible personal property. Therefore, pursuant to § 522(f)(2), the security interests can be avoided to the extent that the debtors' exemptions are impaired.

The fact that Mississippi has excluded voluntary security interests from the scope of its tangible personal property exemption protection does not achieve a similar exclu-

sion from the lien avoidance power of § 522(f).

Therefore, this court is of the opinion that *Owen v. Owen, supra,* effectively supersedes the earlier line of authorities from the Fifth Circuit Court of Appeals. Subject to the limiting conditions set forth earlier in this opinion, the motions filed by the debtors and the Chapter 13 trustee to avoid the nonpossessory, nonpurchase-money security interests of Tower Loan are hereby sustained.

Separate orders will be entered consistent with this Opinion.