United States Court of Appeals,

Fifth Circuit.

No. 93-7266.

In the Matter of James A. MADDOX, et al., Debtors.

TOWER LOAN OF MISSISSIPPI, INC., Appellant,

v.

James A. MADDOX, Jr., et al., Appellees,

and

Harold J. Barkley, Jr., Trustee, Appellee.

March 16, 1994.

Appeals from the United States District Court for the Southern District of Mississippi.

Before HIGGINBOTHAM and WIENER, Circuit Judges, and KAUFMAN,[*] District Judge.

WIENER, Circuit Judge:

Today we address two questions arising under the Bankruptcy Code: (1) Whether the recent Supreme Court case of *Owen v. Owen*[1] has overruled our holding and method in *Matter of McManus*[2] and the line of cases following it, so that a debtor may now avoid a nonpossessory, nonpurchase-money lien under § 522(f)[3] on property exempt from seizure under state law, even though that lien falls

---

[*]District Judge of the District of Maryland, sitting by designation.

[1]500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991).

[2]681 F.2d 353 (5th Cir.1982).

[3]11 U.S.C. § 522(f). All references to sections in the opinion are to sections contained in Title Eleven of the United States Code, unless otherwise indicated.

1

within a state law exception to such an exemption; and (2) whether a chapter 13 trustee has standing under § 1302 to avoid liens under § 522(f). We answer both questions affirmatively.

I

FACTS AND PROCEEDINGS

The facts in this case are undisputed. Creditor-Appellant Tower Loan of Mississippi, Inc. ("Tower Loan") lent money to each of the several Debtors-Appellees (individually, "Debtor"). As security for these loans, each Debtor granted Tower Loan a nonpossessory, nonpurchase-money lien on various items of personal property. Many of these enumerated items are susceptible of classification as property that is both exempt under state law and also eligible for lien-avoidance under § 522(f).[4]

Each Debtor-Appellee sought protection under Chapter 13 of the Bankruptcy Code. Sixteen of these cases were consolidated in the bankruptcy court and form the subject matter of the instant appeal. These cases vary somewhat in their procedural particulars; and these variations are relevant to the issue whether the chapter 13 trustee, Trustee-Appellee Harold J. Barkley, Jr. ("Trustee"), has standing to seek avoidance of liens under § 522(f).

In three of these sixteen cases the Debtor himself or herself initiated the motion to avoid liens under § 522(f). In each of the remaining thirteen cases, however, the Trustee initiated the

---

[4]As explained more fully below, to qualify in the instant case as exempt property subject to avoidance under § 522(f), that property first must fall within an applicable state exemption, such as MISS. CODE ANN. § 85-3-1, and second must be of the type for which a lien may be avoided under § 522(f).

motion.  In twelve of these remaining thirteen cases the individual Debtors subsequently joined in the Trustee's avoidance motion, leaving only one case in which a Debtor did not join.  In one of those twelve cases the Debtor joined the Trustee's motion only after the bankruptcy court "coerced" that Debtor to join.[5]  In the thirteenth case, the Trustee has continued prosecuting the lien-avoidance motion despite the lack of any action on the part of the Debtor, either to join or to oppose the motion.

In regard to the two issues relevant to this appeal, the bankruptcy court determined that:  1) a Debtor in Mississippi may now use § 522(f) to avoid a nonpossessory, nonpurchase-money security interest in property (such as household furnishings and goods) that is exempt under MISS.CODE.ANN. § 85-3-1;  and 2) a chapter 13 trustee has standing to file a motion to avoid such liens.[6]  The bankruptcy court entered orders as to each Debtor accordingly, which orders Tower Loan appealed to the district court.  The Debtor who had been coerced to join the motion did not

---

[5]In this case, the bankruptcy court sustained the Trustee's objection to the plan of the Debtor, an objection that was premised on the failure of the Debtor to take action to avoid a lien under § 522(f).  In sustaining this objection, the bankruptcy court ordered the Debtor either to join the motion of the Trustee or face dismissal of his chapter 13 proceeding.  Not surprisingly, the Debtor subsequently joined.

[6]The bankruptcy court adopted the reasoning used by the bankruptcy court in *In re Kennedy,* 139 B.R. 389 (Bkrtcy.N.D.Miss.1992).  According to the parties, this case is currently on appeal to the district court, which has held it in abeyance pending our resolution of these issues.

3

appeal, however.[7]  In each instance the district court affirmed.
Tower Loan timely continues its appeal to this court.

II

DISCUSSION

A. *Lien Avoidance Under § 522(f) and State Exemptions*

The first issue we address in this appeal arises out of the intersection of the lien-avoidance provision in § 522(f) and the exemption provision in § 522(b).  Subsection (f) of § 522 provides that a debtor may avoid a lien on property to the extent to "which he would have been entitled" to an exemption under subsection (b) of that same section.  This ability to avoid liens under subsection (f) is available only for 1) judicial liens on exempt property,[8] and 2) nonpossessory, nonpurchase-money security interests on exempt property that affect:

> (A) [H]ousehold furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or the dependent of the debtor;

> (B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor;  or

> (C) professionally prescribed health aids for the debtor or a dependent of the debtor.[9]

In determining the universe of exempt property, subsection (b) specifies that a debtor has the option to elect to come under the

---

[7]Consequently, for the reasons expressed *infra* note 41, we express no opinion on the question whether a chapter 13 trustee may coerce or otherwise override the choices of a debtor regarding lien avoidance under § 522(f).

[8]11 U.S.C. § 522(f)(1).

[9]11 U.S.C. § 522(f)(2).

4

umbrella of either the federal list of exemptions or the state list, unless the state has "opted-out" of the federal exemption statute. If the state has opted out then the debtor may claim only those exemptions on the state list.[10] In our circuit, Louisiana[11] and Mississippi[12] have opted out of the federal exemption statute; Texas apparently has not.[13] Nonetheless, all three states provide that the state exemptions remain subject to certain security interests or liens placed on exempt property, i.e., exceptions to the exemptions.[14]

### 1. Owen *and* Matter of McManus

In *Matter of McManus*[15] this court determined that the debtor took "the bitter with the sweet" when he used the Louisiana exemption statute as the basis of avoiding liens under § 522(f). In sum, the exemption available under Louisiana law remained limited by the enumerated exceptions to that exemption. Thus, a

---

[10]*See* 11 U.S.C. § 522(b); *In re Allen,* 725 F.2d 290, 292 (5th Cir.1984).

[11]LA.REV.STAT.ANN. § 13:3881(B).

[12]MISS.CODE ANN. § 85-3-2.

[13]*See In re Allen,* 725 F.2d at 292 (observing that Texas law permits an election between the federal and the state list of exemptions); *see also* 3 COLLIER ON BANKRUPTCY (Lawrence P. King, ed.) ¶ 522.02 (listing opt-out states).

[14]In Louisiana the exemptions remain subject to Chattel Mortgages and security interests under Chapter 9 of the Louisiana Commercial Laws. LA.REV.STAT.ANN. § 13:3885. In Texas the exemptions remain subject to "encumbrances properly fixed on the property." TEX.PROP.CODE ANN. § 42.001. In Mississippi the exemptions remain subject to a "statutory lien or a voluntary security interest." MISS.CODE ANN. § 85-3-1(d).

[15]681 F.2d at 356-57.

debtor could not use § 522(f) to avoid a lien on exempt property when that lien fell within an exception to that exemption under state law.[16] *McManus* has been applied by this court to the Texas exemption statute in *Matter of Allen*[17] and *Matter of Bessent*[18] and to the Mississippi exemption statute in *Matter of Fox.*[19]

Almost a decade after our opinion in *McManus,* the Supreme Court in *Owen v. Owen*[20] addressed whether a judicial lien placed on exempt property could be avoided under § 522(f) in the face of a state law specifying that the judicial lien at issue fell within an exception to the state exemption statute. Parsing the plain wording of § 522(f), the Court focused on the phrase "would have been entitled" and observed that, as applied to federal exemptions, this language has been correctly construed to mean " "would have been' *but for the lien at issue.*"[21] The Court concluded that there was no valid basis for distinguishing between the approach used for state as opposed to federal exemptions. As the Court stated:

> The question then becomes whether a different interpretation should be adopted for State exemptions. We do not see how that could be possible. Nothing in the text of § 522(f) remotely justifies treating the two categories of exemptions

---

[16]*Id.* at 357.

[17]725 F.2d at 292-93.

[18]831 F.2d 82 (5th Cir.1987).

[19]902 F.2d 411, 413-14 (5th Cir.1990).

[20]500 U.S. 305, ----, 111 S.Ct. 1833, 1834-35, 114 L.Ed.2d 350, 356-57 (1991).

[21]*Id.* at 359 (emphasis by Court).

6

differently.[22]

The threshold question we must answer is whether *Owen* has overruled our *McManus* line of cases. Tower Loan attempts to distinguish *Owen* factually as a case involving a judgment lien rather than a nonpossessory, nonpurchase-money lien like the ones here under review. We conclude, however, that this is a classic example of a distinction without a difference. Section 522(f) provides in pertinent part:

> Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor *would have been entitled* under subsection (b) of this section, if such lien is:
>
> (1) a judicial lien; or
>
> (2) a nonpossessory, nonpurchase-money security interest ...[23]

The Court in *Owen* indisputably construed the "would have been entitled" language of § 522(f) to mean that a debtor may avoid liens that are exceptions to the exemption statute under state law: As the structure of the statute demonstrates, that is the operative language applicable to *all* subsections of § 522(f), including the one relating to nonpossessory, nonpurchase-money security interests.

The rationale of the *Owen* decision is perhaps just as important. As one bankruptcy court aptly observed:

---

[22]*Id.* at 360. The Court went on to observe that, even assuming that clear policy considerations would allow the Court to create a distinction not grounded in statutory text, no such considerations were present. *Id.*

[23]11 U.S.C. § 522(f) (emphasis added).

> Central to *Owen* 's analysis is the following proposition: [A]lthough a state may elect what property is exempt under state law, federal law determines the availability of lien avoidance under § 522(f) of the Code. That manner of applying § 522(f) is to be adopted under both the state and federal exemption schemes.[24]

We agree. Consequently, we conclude, and therefore hold today, that *McManus* and our subsequent opinions grounded in it have been overruled by *Owen* to the extent that those cases held lien-avoidance under § 522(f) to be limited by state exceptions.

### 2. *Applying* Owen *to the Instant Case*

Tower Loan asserts essentially two alternative contentions to argue that, even if *Owen* has overruled *McManus, Owen* does not mean that the liens at issue here are avoidable. First, Tower Loan insists that, under the exemption scheme in Mississippi, liens of this type attach *before* the property becomes eligible for exemption. According to Tower Loan, this means that such liens are not fixed "on an interest of the debtor" as required by § 522(f).[25]

Tower Loan is correct to the extent of its assertion that under Mississippi law the identities of the particular items of property that are subject to an exemption are not known until such property is selected by the debtor.[26] And Tower Loan appears to be

---

[24]*In re Kelly,* 133 B.R. 811, 813 (Bktcry.N.D.Tex.1991). Every court that has considered this issue has concluded that *Owen* overruled the *McManus* line of cases. *See Id.; In re Kennedy,* 139 B.R. at 396-97.

[25]*Cf. Owen,* 500 U.S. at ---- - ----, 111 S.Ct. at 1837-38, 114 L.Ed.2d at 359-60 (remanding to determine whether the judicial lien attached before or simultaneously with the debtor's acquisition of the property).

[26]*See* MISS CODE ANN. § 85-3-1(a).

8

correct factually in its assertion that such properties are not selected until after the lien has attached—typically this selection will not occur until the debtor has entered bankruptcy or until his property has been or is about to be subjected to seizure. Nonetheless, Tower Loan makes an impermissible leap of logic when it concludes that the debtor's failure to select the property before the lien attaches means that the lien does not attach to "an interest of the debtor." Tower Loan is reading this to mean "an *exemptible* interest of the debtor," but the statute merely states "an interest of the debtor *in property.*"[27] Nothing in the statute specifies the need for attachment to an exemptible interest of the debtor in the property; at a minimum, the Debtor's ownership interest in the property at issue here suffices. Accordingly, we reject Tower Loan's first argument.

For its second contention, Tower Loan relies on the nature of a chapter 13 bankruptcy to urge that *Owen* is inapposite: Section 522(f) does not apply at all in chapter 13, insists Tower Loan, because liens such as nonpossessory, nonpurchase-money ones do not "impair an exemption" to which the debtor would otherwise be entitled. This is so, Tower Loan urges, because a chapter 13 debtor gets to keep his property so long as he proposes and executes an acceptable confirmation plan under chapter 13. And the amount due under that confirmation plan is determined by the

---

[27]11 U.S.C. § 522(f) (emphasis added). *See Farrey v. Sanderfoot,* 500 U.S. 291, ----, 111 S.Ct. 1825, 1828-29, 114 L.Ed.2d 337, 344-45 (1991) (concluding that the debtor must have an interest in the *property* at issue before being able to avoid a lien under § 522(f)).

"disposable income test" of the debtor without reference to whether the underlying debts are secured or unsecured.[28]

But under the plain language of the Bankruptcy Code, § 522(f) does apply in chapter 13 bankruptcies:  Section 103(a) expressly provides, *inter alia,* that Chapter 5—which includes § 522(f)—applies to cases under Chapters 7, 11, 12, or 13.[29]  Tower Loan's "no practical impairment" argument is not sufficient to refute this explicit language.  Moreover, Tower Loan's argument has been rejected by the only circuit court that has expressly ruled on this issue.[30]

In addition, Tower Loan's "no practical impairment" argument proves to be factually wrong in at least one situation.  A debtor must cross a "best interests of the creditor" threshold to have a confirmable plan in chapter 13.[31]  Simply put, under § 1325 the plan generally must provide that the unsecured creditors receive at least as much value as they would have received in a chapter 7 liquidation, and that the secured creditors must receive the

---

[28]11 U.S.C. § 1325(b)(1)(B).

[29]11 U.S.C. § 103(a).

[30]The parties cite only one circuit court decision that has ruled on this issue:  *In re Hall,* 752 F.2d 582, 589-90 (11th Cir.1985) (holding that § 522(f) applies in chapter 13 bankruptcies).  Our independent research discloses that every other circuit addressing lien avoidance in chapter 13 has simply assumed that a chapter 13 debtor may avoid liens under § 522(f). *See In re McKay,* 732 F.2d 44, 48 (3rd Cir.1984);  *Mead v. Mead,* 974 F.2d 990, 991-92 (8th Cir.1992);  *In re Billings,* 838 F.2d 405, 406 (10th Cir.1988).

[31]*See* 11 U.S.C. § 1325.

present value of their collateral.[32] Thus, under relatively limited circumstances, avoiding a lien under § 522(f) would allow a debtor to file a chapter 13 bankruptcy that he would not otherwise have been able to file; he may do so because § 522(f) converts the creditor's status from secured to unsecured, thereby changing the amount due that creditor.[33] Our comfort level in the result we reach here is increased when we realize that, by allowing such a debtor to pursue a chapter 13 bankruptcy, we further the congressional preference for chapter 13 repayment plans over

---

[32]11 U.S.C. § 1325(a)(4) & (5); *see also In re Driver,* 133 B.R. 476, 479 (Bkrtcy.S.D.Ind.1991) (discussing same); 5 COLLIER at ¶¶ 1325.05-.06 (laying out application of standards in § 1325(a)(4) & (5)).

[33]The amount due that creditor may substantially change because of the interplay between § 522 and § 1325. Under § 1325 that creditor, as a secured creditor with "an allowed secured claim," *see* § 1325(a)(5) & FED.R.BANKR.P. 3001-08, is entitled to receive the present value of his collateral. 11 U.S.C. § 1325(a)(5). If, however, the lien is avoided this creditor drops to unsecured status with two consequences: He is now only entitled to receive what an unsecured creditor "would have received" in a chapter 7 liquidation, and, since the lien may only be avoided on property exempt under § 522(b)—which by definition means that that property has been removed from "the property of the estate"—what that unsecured creditor (indeed, any unsecured creditor) "would have received" on *that* property is nothing under Chapter 7. (Of course, this creditor, as an unsecured one, would still remain entitled to receive his pro-rata share of the payments made by the debtor for that class of creditors).

   Albeit in relatively limited circumstances, the foregoing change in amount due may sometimes mean the difference between having a confirmable as opposed to an unconfirmable plan under Chapter 13. For a useful hypothetical illustrating this proposition, see McLaughlin, *Lien Avoidance by Debtors in Chapter 13 of the Bankruptcy Reform Act of 1978,* 58 AM.BANKR.L.J. 45, 64-65 (1984).

chapter 7 liquidations.[34]

B. *Standing of Chapter 13 Trustee to Assert Lien Avoidance*

In the instant case, the Trustee initiated 13 of the 16 motions to avoid liens under § 522(f). Tower Loan argues that the Trustee's peculiar status in Chapter 13 eschews his standing to assert § 522(f) unilaterally. Although this issue may have been mooted for the eleven motions voluntarily joined in by the Debtors, it has not been mooted for at least one of the two remaining Trustee-initiated motions.[35] In that one, the Trustee is still proceeding in the absence of the Debtor. Thus, the issue whether a chapter 13 trustee, proceeding alone, has standing to seek

---

[34]The House report accompanying the Bankruptcy Reform Act of 1978 states:

> The premises of the bill with respect to consumer bankruptcy are that use of the bankruptcy law should be a last resort; that if it is used, debtors should attempt repayment under Chapter 13 ...
>
> ....
>
> ... In addition, [Chapter 13] satisfies many debtors' desire to avoid the stigma attached to straight bankruptcy and to retain the pride attendant on being able to meet one's obligations. The benefit to creditors is self-evident: their losses will be significantly less than if their debtors opt for straight bankruptcy.

H.R.REP. No. 95-595, 95th Cong., 2d Sess., at 118, *reprinted in* 5 U.S.C.C.A.N. 5787, 6078-79 (1978).

[35]Surprisingly, the Trustee does *not* claim that this joinder moots this issue as to these motions. Because we conclude that the issue of standing is squarely raised for at least one of the two remaining motions, we need not address this issue. Although the other remaining motion involved the coerced joinder of the Debtor, we express no opinion regarding whether this joinder was proper. See *supra* note 7.

lien-avoidance under § 522(f) is squarely presented.  The limited jurisprudence on this point discloses that no resolution—or even consensus—has yet been achieved.  Further, it appears that no circuit court has yet addressed this issue.[36]

      1. *The Debtor-Creditor Relationship in Chapter 13*

In order to understand the practical import of trustee standing in Chapter 13, we first briefly address the nature of the debtor-creditor relationship in Chapter 13.  As noted, in certain, relatively limited circumstances the debtor will have an incentive to avoid liens under § 522(f).  In the typical case, however, the debtor will be indifferent to lien-avoidance:  Assuming that the plan is confirmable—as it typically is under Chapter 13—the debtor retains control of "the property of the estate";[37]  his payment during the life of the plan is determined by the "disposable income" test without regard to the nature of the underlying debt;[38] and, after completion of the plan, the debtor receives a discharge of all debts irrespective of whether they are secured or unsecured.[39]

---

[36]The Trustee cites only one case that squarely addresses this issue, which ruled in the affirmative.  *In re Kennedy,* 139 B.R. at 390-92.  Tower Loan cites several bankruptcy court decisions that, although not squarely addressing this precise issue, contain reasoning which indicates that such standing would not be granted.  *E.g., In re Ciavarella,* 28 B.R. 823, 825-28 (Bankr.S.D.N.Y.1983) (concluding that a chapter 13 trustee cannot avoid preferential transfers under § 547(b) because the role of the chapter 13 trustee is limited).

[37]11 U.S.C. § 1327(b).

[38]*See* 11 U.S.C. § 1325(b)(1).

[39]11 U.S.C. § 1328.

Thus, in the typical case, lien avoidance under § 522(f) only adjusts the distribution of payments among the creditors: The putative secured creditor drops into the unsecured creditor class, thereby decreasing his share of payments, while the share of payments received by the original class of unsecured creditors increases concomitantly. Consequently, in the great majority of chapter 13 cases, the trustee is asserting lien avoidance under § 522(f) to protect the interests of this original class of unsecured creditors.

## 2. *Statutory and Historical Analysis*

Tower Loan maintains that the plain language of § 522(f) interdicts trustee standing. Section 522(f) begins by providing: "Notwithstanding any waiver of exemptions, *the debtor may* avoid the fixing of a lien ..."[40] Tower Loan reasons that the express inclusion of one—the debtor—implies the exclusion of the other—the trustee. According to Tower Loan, this conclusion is strengthened by the use of the discretionary term "may": If a chapter 13 trustee could proceed without a debtor then that trustee would negate the debtor's prerogative to pursue or not pursue lien avoidance. Again, we must disagree.

We first observe that Tower Loan overstates the issue presented: We only address today whether a chapter 13 trustee has standing to assert lien avoidance; the issue whether that trustee

---

[40]11 U.S.C. § 522(f) (emphasis added).

may also override a debtor's preference is not before us.[41]   And, even though Tower Loan's plain-language argument has some force, it fails or refuses to recognize that a chapter 13 trustee's authority to act—and hence his standing—is derived from more than one section of the Bankruptcy Code.[42]   In particular, § 1302 generally sets out the powers and duties of the chapter 13 trustee.

Before we parse § 1302 we observe that its plain language—like that of § 522—does *not* explicitly resolve the precise issue before us.   Thus to understand § 1302 better, we briefly review the

---

[41]Tower Loan's argument regarding debtor choice is premised in the instant case on the notion that the bankruptcy court improperly compelled a Debtor to join the Trustee's lien-avoidance motion.   The Debtor who was compelled to join that motion has *not* appealed, however, and thus that Debtor could not, and has not, joined in Tower Loan's brief.   See *supra* note 7 and accompanying text.   Consequently, Tower Loan's argument here is nothing more than an attempt to assert the rights of a third party, i.e., that Debtor's purported freedom from compelled joinder.

We generally do not grant a litigant standing to assert the rights of others. *E.g., Searcy v. Houston Lighting & Power Co.,* 907 F.2d 562, 564 (5th Cir.1990).   Given that there was little impedient to that Debtor asserting a right to be free from compelled joinder, and given that creditors such as Tower Loan are usually in an adversarial relationship with their debtors, we find little reason to depart from that general rule here. *See, e.g., Friedman v. Harold,* 638 F.2d 262, 264-68 (1st Cir.1981) (concluding same in the context of bankruptcy litigation); *see generally* ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 2.3.4 (1989) (observing that third party standing is generally not recognized unless the third party is unable to assert his or her own rights, or unless there is a close relationship between the advocate of those rights and the third party).

[42]We of course read the Bankruptcy Code *in pari materia* to ascertain its meaning. *E.g., In re Howard,* 972 F.2d 639, 640 (5th Cir.1992) (citing *United States Savings Ass'n v. Timbers of Inwood Forest,* 484 U.S. 365, 370-72, 108 S.Ct. 626, 629-31, 98 L.Ed.2d 740 (1988)).

genesis of Chapter 13.

Chapter 13 required substantial legislative attention by Congress[43] when it drafted and enacted the Bankruptcy Reform Act of 1978 (the "Bankruptcy Act").[44]  Such attention was required because the forerunner of Chapter 13—Chapter XIII (which had been enacted in 1938[45])—had failed to keep pace with the exponential growth in consumer credit following World War II.[46]  Chapter XIII—which had been the logical chapter within which to deal with consumer debt in the bankruptcy context—suffered from numerous defects, including the erratic status of secured creditors[47] and the uncertain role of the chapter XIII trustee.[48]  Moreover, because consumer credit was (and is) usually extended in reliance on *future income*[49]—and because the defects in Chapter XIII often left debtors with no choice but to liquidate present assets—the consumer credit industry had

---

[43]5 COLLIER at ¶ 1300.01.

[44]Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, 92 Stat. 2549 (1978).

[45]52 Stat. 930 (1938);  *see also Perry v. Commerce Loan Co.,* 383 U.S. 392, 393-97, 86 S.Ct. 852, 853-56, 15 L.Ed.2d 827 (1966) (discussing enactment and amendments to Chapter XIII).

[46]H.R.REP. No. 95-595 at 116, *reprinted in* 5 U.S.C.C.A.N. 5787, 6076 (1978).

[47]S.REP. No. 95-989, 95th Cong., 2d Sess. at 13, *reprinted in* 5 U.S.C.C.A.N. 5787, 5799 (1978).

[48]5 COLLIER at ¶ 1300.01;  *see also* Tselikis, *The Chapter 13 Trustee:  "Trustee" or Disbursing Agent?,* 21 ME.L.REV. 53 (1969).

[49]*See, e.g.,* 5 COLLIER at ¶ 1300.01.

16

devised various onerous techniques to protect their loans.[50]

Congress addressed some of the problems caused by these onerous consumer credit practices by enacting § 522(f).[51] In addressing the problems engendered by the ambivalent status of the chapter XIII trustee, Congress devised a broad role for trustees under Chapter 13. As the Senate Report accompanying § 1302 states:

> The principal administrator in a chapter 13 case is the chapter 13 trustee. Experience under Chapter XIII of the Bankruptcy Act has shown that the more efficient and effective wage earner programs have been conducted by standing chapter XIII trustees who exercise a broad range of responsibilities in both the design and effectuation of debtor plans.
>
> . . . . .
>
> Subsection (b)(1) [of § 1302] makes it clear that the chapter 13 trustee is no mere disbursing agent ...[52]

This role was given effect through the enactment of § 1302 into law as part of the Bankruptcy Act.

When we examine § 1302 closely, we discern that Congress has given the chapter 13 trustee a broad array of powers and duties. Like the chapter 7 trustee, the chapter 13 trustee serves the interests of all creditors primarily by collecting payments from debtors and disbursing them to creditors. And the *role* of the chapter 13 trustee in this regard is virtually identical to the one

---

[50]Of particular note to Congress was the technique of acquiring an overly broad security interest in all of a consumer's household and personal goods, a technique that often prevented the debtor from gaining the "fresh start" from bankruptcy desired by Congress. *See* H.R.REP. No. 95-595 at 117, *reprinted in* 5 U.S.C.C.A.N. 5787, 6077 (1978).

[51]*See id.*

[52]S.REP. No. 95-989 at 139, *reprinted in* 5 U.S.C.C.A.N. 5787, 5925 (1978).

17

played by the chapter 7 trustee:  Only the "asset" collected and disbursed differs.  In Chapter 7 the "asset" is the property of the debtor;  in Chapter 13 the "asset" is the future income of the debtor.

But a chapter 13 trustee "is no mere disbursing agent."[53]  Of particular importance to the instant case, § 1302 grants the chapter 13 trustee various powers to ensure that such collections and disbursements occur equitably, according to the dictates of Congress.  Under subsection (b)(1) of § 1302, the chapter 13 trustee has the power contained in § 704(5) to "examine proofs of claims and object to the allowance of any claim that is improper."[54] And under subsection (b)(2) of § 1302 that trustee is granted standing to "appear and be heard" in a hearing to confirm a Chapter 13 plan.

When these subsections are read from the perspective of the historical development of Chapter 13—and in light of the role that Congress envisioned for the chapter 13 trustee—the conclusion that these subsections support the proposition that a chapter 13 trustee has standing to avoid liens under § 522(f) is unassailable.  As noted, under subsection (b)(2) the chapter 13 trustee is vested with standing to participate in the confirmation of a plan.  Such participation would be eviscerated if the chapter 13 trustee were to lack standing—whether at the hearing or at an earlier stage of the case—to prevent the inequitable distribution of payments caused

---

[53]*Id.*

[54]11 U.S.C. § 704(5).

18

by failure to avoid a lien under § 522(f).

Such standing comes from subsection (b)(1). Under that subsection, the Trustee's avoidance of the lien under § 522(f) may be properly characterized as nothing more than an objection to the secured claim represented by that lien as improper, i.e., that by virtue of § 522(f) that claim ought to be classified as unsecured.[55] And this objection is, of course, precisely the type of action encompassed within the power to "examine proofs of claims and object to the allowance of any claim that is improper" incorporated in § 1302(b)(1).[56] This conclusion is further reinforced by the antidiscrimination principle contained in § 1322(a)(3) of Chapter 13, providing as it does that "if the plan classifies [unsecured] claims, [the plan shall] provide the same treatment for each claim within a particular class."[57] In sum, this unsecured claim has been treated unlike others by being incorrectly classified as secured. Thus, this putative secured claim is likewise improper under § 1322(a)(3)—and hence subject to objection by the chapter 13 trustee under § 1302(b)(1).

In view of the foregoing, we hold today that a chapter 13 trustee has standing to avoid liens under § 522(f). By so doing, we are acknowledging that the only chapter 13 actor who typically has an interest in lien-avoidance—the chapter 13 trustee—has

---

[55]*See Kennedy,* 139 B.R. at 391.

[56]This power is included in § 1302 by the incorporation of § 704(5). *See* 11 U.S.C. §§ 704(5) & 1302(b)(1).

[57]11 U.S.C. § 1322(a)(3).

19

authority to do so, thereby effecting an equitable distribution of payments among *all* creditors.

III

CONCLUSION

Bankruptcy courts are important institutions in our modern economy, operating to ensure, to the extent practicable, the equitable distribution of assets when financial misfortune or misplanning befalls a debtor. Trustees play a significant role in this process, helping to see to it that such distributions follow the dictates of Congress.

When the relevant statutes and sections are read in light of the historical development of Chapter 13, it becomes apparent that Congress did not intend to exclude chapter 13 trustees from playing such roles. Accordingly, we hold today that a chapter 13 trustee has standing to seek lien-avoidance under § 522(f). We also acknowledge that *Owen* has overruled our *McManus* line of cases. Consequently, we hold today that, although states remain free to define the property eligible for exemptions under § 522(b), the particular liens that may be avoided on that property are determined by reference to federal law; specifically, § 522(f) of the Bankruptcy Code.

For the foregoing reasons, the orders of the bankruptcy court appealed from herein are, in all respects,

AFFIRMED.