OWEN *v.* OWEN

No. 89–1008.   Argued November 5, 1990—Decided May 23, 1991

SCALIA, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, MARSHALL, BLACKMUN, O'CONNOR, KENNEDY, and SOUTER, JJ., joined. STEVENS, J., filed a dissenting opinion, *post*, p. 314.

*Roger L. Fishell* argued the cause for petitioner. With him on the briefs was *Isidore Kirshenbaum.*

*Timothy B. Dyk* argued the cause for respondent. With him on the brief was *David A. Townsend.*

JUSTICE SCALIA delivered the opinion of the Court.

The Bankruptcy Code allows the States to define what property a debtor may exempt from the bankruptcy estate that will be distributed among his creditors. 11 U. S. C. § 522(b). The Code also provides that judicial liens encumbering exempt property can be eliminated. § 522(f). The question in this case is whether that elimination can operate when the State has defined the exempt property in such a way as specifically to exclude property encumbered by judicial liens.

I

In 1975, Helen Owen, the respondent, obtained a judgment against petitioner Dwight Owen, her former husband, for approximately $160,000. The judgment was recorded in Sarasota County, Florida, in July 1976. Petitioner did not at that time own any property in Sarasota County, but under

Florida law, the judgment would attach to any after-acquired property recorded in the county. *B. A. Lott, Inc.* v. *Padgett*, 153 Fla. 304, 14 So. 2d 667 (1943). In 1984, petitioner purchased a condominium in Sarasota County; upon acquisition of title, the property became subject to respondent's judgment lien. *Porter-Mallard Co.* v. *Dugger*, 117 Fla. 137, 157 So. 429 (1934).

One year later, Florida amended its homestead law so that petitioner's condominium, which previously had not qualified as a homestead, thereafter did. Under the Florida Constitution, homestead property is "exempt from forced sale . . . and no judgment, decree or execution [can] be a lien thereon . . . ," Fla. Const., Art. 10, § 4(a). The Florida courts have interpreted this provision, however, as being inapplicable to pre-existing liens, *i. e.*, liens that attached before the property acquired its homestead status. *Bessemer* v. *Gersten*, 381 So. 2d 1344, 1347, n. 1 (Fla. 1980); *Aetna Ins. Co.* v. *LaGasse*, 223 So. 2d 727, 728 (Fla. 1969); *Pasco* v. *Harley*, 73 Fla. 819, 824–825, 75 So. 30, 32–33 (1917); *Volpitta* v. *Fields*, 369 So. 2d 367, 369 (Fla. App. 1979); *Lyon* v. *Arnold*, 46 F. 2d 451, 452 (CA5 1931). Pre-existing liens, then, are in effect an exception to the Florida homestead exemption.

In January 1986, petitioner filed for bankruptcy under Chapter 7 of the Code, and claimed a homestead exemption in his Sarasota condominium. The condominium, valued at approximately $135,000, was his primary asset; his liabilities included approximately $350,000 owed to respondent. The Bankruptcy Court discharged petitioner's personal liability for these debts, and sustained, over respondent's objections, his claimed exemption.

The condominium, however, remained subject to respondent's pre-existing lien, and after discharge, petitioner moved to reopen his case to avoid the lien pursuant to § 522(f)(1). The Bankruptcy Court refused to decree the avoidance; the District Court affirmed, finding that the lien had attached

before the property qualified for the exemption, and that Florida law therefore did not exempt the lien-encumbered property. 86 B. R. 691 (MD Fla. 1988). The Court of Appeals for the Eleventh Circuit affirmed on the same ground. 877 F. 2d 44 (1989). We granted certiorari. 495 U. S. 929 (1990).

## II

An estate in bankruptcy consists of all the interests in property, legal and equitable, possessed by the debtor at the time of filing, as well as those interests recovered or recoverable through transfer and lien avoidance provisions. An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor. Section 522 determines what property a debtor may exempt. Under § 522(b), he must select between a list of federal exemptions (set forth in § 522(d)) and the exemptions provided by his State, "unless the State law that is applicable to the debtor . . . specifically does not so authorize," § 522(b)(1) — that is, unless the State "opts out" of the federal list. If a State opts out, then its debtors are limited to the exemptions provided by state law. Nothing in subsection (b) (or elsewhere in the Code) limits a State's power to restrict the scope of its exemptions; indeed, it could theoretically accord no exemptions at all.

Property that is properly exempted under § 522 is (with some exceptions) immunized against liability for prebankruptcy debts. § 522(c). No property can be exempted (and thereby immunized), however, unless it first falls *within* the bankruptcy estate. Section 522(b) provides that the debtor may exempt certain property "from property of the estate"; obviously, then, an interest that is not possessed by the estate cannot be exempted. Thus, if a debtor holds only bare legal title to his house—if, for example, the house is subject to a purchase-money mortgage for its full value—then only that legal interest passes to the estate; the equitable interest remains with the mortgage holder, § 541(d). And since the

equitable interest does not pass to the estate, neither can it pass to the debtor as an exempt interest in property. Legal title will pass, and can be the subject of an exemption; but the property will remain subject to the lien interest of the mortgage holder. This was the rule of *Long* v. *Bullard*, 117 U. S. 617 (1886), codified in § 522. Only where the Code empowers the court to avoid liens or transfers can an interest originally not within the estate be passed to the estate, and subsequently (through the claim of an exemption) to the debtor.

It is such an avoidance provision that is at issue here, to which we now turn. Section 522(f) reads as follows:

> "(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is —
> "(1) a judicial lien; or
> "(2) a nonpossessory, nonpurchase-money security interest . . . ."

The lien in the present case is a judicial lien, and we assume without deciding that it fixed "on an interest of the debtor in property." See *Farrey* v. *Sanderfoot, ante,* p. 291. The question presented by this case is whether it "impairs an exemption to which [petitioner] would have been entitled under subsection (b)." Since Florida has chosen to opt out of the listed federal exemptions, see Fla. Stat. § 222.20 (1989), the only subsection (b) exemption at issue is the Florida homestead exemption described above. Respondent suggests that, to resolve this case, we need only ask whether the judicial lien impairs that exemption. It obviously does not, since the Florida homestead exemption is not assertable against pre-existing judicial liens. To permit avoidance of the lien, respondent urges, would not *preserve* the exemption but would *expand* it.

At first blush, this seems entirely reasonable. Several Courts of Appeals in addition to the Eleventh Circuit here have reached this result with respect to built-in limitations on state exemptions,[1] though others have rejected it.[2] What must give us pause, however, is that this result has been widely *and uniformly* rejected with respect to built-in limitations on the *federal* exemptions. Most of the federally listed exemptions (set forth in § 522(d)) are explicitly restricted to the "debtor's aggregate interest" or the "debtor's interest" up to a maximum amount. See §§ 522(d)(1)–(6), (8). If respondent's approach to § 522(f) were applied, all of these exemptions (and perhaps others as well)[3] would be limited by unavoided encumbering liens, see § 522(c). The federal homestead exemption, for example, allows the debtor to exempt from the property of the estate "[t]he debtor's aggregate interest, not to exceed $7,500 in value, in . . . a residence." § 522(d)(1). If respondent's interpretation of § 522(f) were applied to this exemption, a debtor who owned a house worth $10,000 that was subject to a judicial lien for $9,000 would not be entitled to the full homestead exemption of $7,500. The judicial lien would not be avoidable under § 522(f), since it does not "impair" the exemption, which is limited to the debtor's "aggregate interest" of $1,000. The uniform practice of bankruptcy courts, however, is to the contrary. To determine the application of § 522(f) they ask not whether the lien impairs an exemption to which the debtor is in fact entitled, but whether it impairs an exemp-

---

[1] See *In re Pine*, 717 F. 2d 281 (CA6 1983); *In re McManus*, 681 F. 2d 353 (CA5 1982).

[2] See *In re Brown*, 734 F. 2d 119 (CA2 1984); *Dominion Bank of Cumberlands, NA* v. *Nuckolls*, 780 F. 2d 408 (CA4 1985); *In re Thompson*, 750 F. 2d 628 (CA8 1984); *In re Leonard*, 866 F. 2d 335 (CA10 1989).

[3] Exemption (7) refers to a life insurance contract "owned" by the debtor, and exemptions (10) and (11) refer to various benefits, awards, and payments that the debtor has a "right to receive." §§ 522(d)(7), (10), (11). Only exemption (9), § 522(d)(9), contains no language arguably excluding property subject to lien.

tion to which he *would have been* entitled but for the lien itself.[4]

As the preceding italicized words suggest, this reading is more consonant with the text of § 522(f)—which establishes as the baseline, against which impairment is to be measured, not an exemption to which the debtor *"is* entitled," but one to which he *"would have been* entitled." The latter phrase denotes a state of affairs that is conceived or hypothetical, rather than actual, and requires the reader to disregard some element of reality. "Would have been" *but for what?* The answer given, with respect to the federal exemptions, has been *but for the lien at issue,* and that seems to us correct.

The only other conceivable possibility is *but for a waiver*— harking back to the beginning phrase of § 522(f), "Notwithstanding any waiver of exemptions . . . ." The use of contrary-to-fact construction after a "notwithstanding" phrase is not, however, common usage, if even permissible. Moreover, though one might employ it when the "notwithstanding" phrase is the main point of the provision in ques-

---

[4]See, *e. g., In re Simonson,* 758 F. 2d 103, 105 (CA3 1985); *In re Brantz,* 106 B. R. 62, 68 (Bkrtcy. Ct. ED Pa. 1989); *In re Carney,* 47 B. R. 296, 299 (Bkrtcy. Ct. Mass. 1985); *In re Losieniecki,* 17 B. R. 136, 138 (Bkrtcy. Ct. WD Pa. 1981). See also 3 Collier on Bankruptcy ¶ 522.29 (15th ed. 1990); B. Weintraub & A. Resnick, Bankruptcy Law Manual ¶ 4.08[2] (1986); Bowmar, Avoidance of Judicial Liens that Impair Exemptions in Bankruptcy: The Workings of 11 U. S. C. § 522(f)(1), 63 Am. Bankr. L. J. 375, 387–388, and n. 85 (1989) (hereinafter Bowmar). Some courts have held that § 522(f) allows the avoidance of liens even when, after the avoidance, there would be no debtor's interest in the property to which a § 522(d) exemption could attach. See, *e. g., In re Richardson,* 55 B. R. 526 (Bkrtcy. Ct. ND Ohio 1985); *In re Chesanow,* 25 B. R. 228, 231 (Bkrtcy. Ct. Conn. 1982). But see, *e. g., In re Hooper,* 60 B. R. 640, 641 (Bkrtcy. Ct. WD Pa. 1986); *In re Barone,* 31 B. R. 540 (Bkrtcy. Ct. ED Pa. 1983). Today's opinion does not speak to this issue. Finally, at least one court has suggested that equity excluding the liens is required for there to be an "interest" within the scope of § 522(f), *In re Miller,* 8 B. R. 43 (Bkrtcy. Ct. WD Mo. 1980), but that position has been rejected, *In re Cole,* 15 B. R. 322, 323, n. 1 (Bkrtcy. Ct. WD Mo. 1981).

tion ("Notwithstanding any waiver, a debtor shall retain those exemptions to which he would have been entitled under subsection (b)"), it would be most strange to employ it where the "notwithstanding" phrase, as here, is an aside. The point of § 522(f) is not to exclude waivers (though that is done in passing, waivers are addressed directly in § 522(e)) but to provide that the debtor may avoid the fixing of a lien. In that context, for every instance in which "would have been entitled" may be accurate (because the incidentally mentioned waiver occurred) there will be thousands of instances in which "is entitled" should have been used. It seems to us that "would have been entitled" must refer to the generality, if not indeed the universality, of cases covered by the provision; and on that premise the only conceivable fact we are invited to disregard is the existence of the lien.

This reading must also be accepted, at least with respect to the federal exemptions, if § 522(f) is not to become an irrelevancy with respect to the most venerable, most common, and most important exemptions. The federal exemptions for homesteads (§ 522(d)(1)), for motor vehicles (§ 522(d)(2)), for household goods and wearing apparel (§ 522(d)(3)), and for tools of the trade (§ 522(d)(6)), are all defined by reference to the debtor's "interest" or "aggregate interest," so that if respondent's interpretation is accepted, no encumbrances of these could be avoided. Surely § 522(f) promises more than that — and surely it would be bizarre for the federal scheme to prevent the avoidance of liens on those items, but to permit it for the less crucial items (for example, an "unmatured life insurance contract owned by the debtor," § 522(d)(7)) that are not described in such fashion as unquestionably to exclude liens.

We have no doubt, then, that the lower courts' unanimously agreed-upon manner of applying § 522(f) to federal exemptions — ask first whether avoiding the lien would entitle the debtor to an exemption, and if it would, then avoid

and recover the lien—is correct.[5]  The question then becomes whether a different interpretation should be adopted for state exemptions.  We do not see how that could be possible.  Nothing in the text of § 522(f) remotely justifies treating the two categories of exemptions differently.  The provision refers to the impairment of "exemption[s] to which the debtor would have been entitled under subsection (b)," and that includes federal exemptions and state exemptions alike.  Nor is there any overwhelmingly clear policy impelling us, if we possessed the power, to create a distinction that the words of the statute do not contain.  Respondent asserts that it is inconsistent with the Bankruptcy Code's "opt-out" policy, whereby the States may define their own exemptions, to refuse to take those exemptions with all their built-in limitations.  That is plainly not true, however, since there is no doubt that a state exemption which purports to be available "unless waived" will be given full effect, *even if it has been waived*, for purposes of § 522(f)—the first phrase of which, as we have noted, recites that it applies "[n]otwithstanding any waiver of exemptions."  See *Dominion Bank of Cumberlands, NA* v. *Nuckolls*, 780 F. 2d 408, 412 (CA4 1985).  Just as it is not inconsistent with the policy of permitting state-defined exemptions to have another policy disfavoring waiver of exemptions, whether federal- or state-created; so also it is not inconsistent to have a policy disfavoring the impingement of certain types of liens upon exemptions, whether federal- or state-created.  We have no basis for pronouncing the opt-out policy absolute, but must apply it along with whatever other competing or limiting policies the statute contains.

On the basis of the analysis we have set forth above with respect to federal exemptions, and in light of the equivalency of treatment accorded to federal and state exemptions by § 522(f), we conclude that Florida's exclusion of certain liens from the scope of its homestead protection does not achieve a

---

[5] For a more precise formulation, see *In re Brantz*, 106 B. R., at 68; *In re Carney*, 47 B. R., at 299; Bowman 388–392.

similar exclusion from the Bankruptcy Code's lien avoidance provision.[6]

### III

The foregoing conclusion does not necessarily resolve this case. Section 522(f) permits the avoidance of the "fixing of a lien on an interest of the debtor." Some courts have held it inapplicable to a lien that was already attached to property when the debtor acquired it, since in such a case there never was a "*fixing* of a lien" on *the debtor's* interest. See *In re McCormick*, 18 B. R. 911, 914 (Bkrtcy. Ct. WD Pa.), aff'd, 22 B. R. 997 (WD Pa. 1982); *In re Scott*, 12 B. R. 613, 615 (Bkrtcy. Ct. WD Okla. 1981). Under Florida law, the lien may have attached simultaneously with the acquisition of the property interest. If so, it could be argued that the lien did not fix "on an interest of the debtor." See *Farrey* v. *Sanderfoot, ante,* p. 291. The Court of Appeals did not pass on this issue, nor on the subsidiary question whether the Florida statute extending the homestead exemption was a taking, cf. *United States* v. *Security Industrial Bank,* 459 U. S. 70 (1982). We express no opinion on these points, and leave them to be considered by the Court of Appeals on remand.

The judgment of the Court of Appeals is reversed, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, dissenting.

The Court's analysis puts the cart before the horse. As I read the statute at issue, it is not necessary to reach the issue

[6] In the dissent's view, the question is whether the lien impairs an "exemption to which the debtor would have been entitled at the time the lien 'fixed.'" *Post,* at 317. Under the Code, however, the question is whether the lien impairs an "exemption to which the debtor would have been entitled under subsection (b)," and under subsection (b), exempt property is determined "on the date of the filing of the petition," not when the lien fixed. 11 U. S. C. §§ 522(f), (b)(2)(A). We follow the language of the Code.

the majority addresses. In construing the lien avoidance provisions of the Bankruptcy Code, it is important to recognize a distinction between two classes of cases: those in which the lien attached to the exempt property *before* the debtor had any right to claim an exemption, and those in which the lien attached *after* the debtor acquired that right. This case falls in the former category. As I shall explain, I believe it was correctly decided by the Bankruptcy Court, the District Court, and the Court of Appeals, and that the judgment should be affirmed.

## I

The facts raise a straightforward issue: whether the lien avoidance provisions in § 522(f) of the Bankruptcy Code, 11 U. S. C. § 522(f),[1] apply to a judicial lien that attached before the debtor had any claim to an exemption. It is undisputed that respondent's judicial lien attached to petitioner's Sarasota condominium when he acquired title to the property in November 1984. It is also undisputed that petitioner was not entitled to a homestead exemption when he acquired title because he was single. At that time, the exemption was available only to a "head of a household" under Article 10, § 4, of the Florida Constitution. An amendment that became effective in 1985 broadened the exemption to extend to "a natural person." Fla. Const., Art. 10, § 4. On the effective date of this amendment petitioner became entitled to the homestead exemption at issue in this case.[2] Thus, it is undisputed that petitioner had an exemption on his condominium when he filed his bankruptcy petition in 1986, but did not

---

[1] Section 522(f) provides:

"(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

"(1) a judicial lien; or

"(2) a nonpossessory, nonpurchase-money security interest . . . ."

[2] The amendment was adopted in November 1984, but became effective on January 8, 1985. See Fla. Const., Art. 11, § 5.

have a right to that exemption in 1984 when respondent's judicial lien attached.

As I read the text of § 522(f), it does not authorize the avoidance of liens that were perfected at a time when the debtor could not claim an exemption in the secured property. The Bankruptcy Code deals with the subject of exemptions in two separate provisions that are relevant to this case. The first of these provisions, § 522(b), identifies property that is exempt from the claims of general creditors.[3] Focusing on the legal interests in the property at the time of the bankruptcy, this section identifies property that is exempt from the bankrupt estate and therefore cannot be sold by the trustee to satisfy the claims of general creditors. See H. R. Rep. No. 95–595, pp. 360–361 (1977); S. Rep. No. 95–989, pp. 75–76 (1978). In this case, petitioner's condominium in Sarasota, Florida, was entitled to a homestead exemption as a matter of Florida law when he filed for bankruptcy and therefore was properly excluded from the estate. See 877 F. 2d 44, 45 (CA11 1989). The property was fully protected from the claims of general creditors by the operation of § 522(b).

The second provision that is relevant to this suit, § 522(f), is concerned with the priority of secured creditors, not the

---

[3] Section 522(b) provides, in relevant part:

"Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.

.      .      .      .

"Such property is—

"(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,

"(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place . . . ."

claims of general creditors. Section 522(f) establishes a rule of priority between the debtor's legal interest and creditors' security interests in exempt property as opposed to the property of the estate. The statute establishes the priority by allowing the debtor to avoid the fixing of judicial liens and certain nonpossessory, nonpurchase-money security interests under the right circumstances to the extent that they encumber the exemption.

As it applies to judicial liens, § 522(f) raises two questions: (1) whether the exemption provides a basis for avoidance of the lien; and (2) if so, to what extent should the lien be avoided? The first question concerns the relative priority of conflicting claims on the same asset; on such issues, the timing of the claims is often decisive. The second question—I shall call it the "impairment question"—concerns the distribution of the proceeds of sale after the issue of priority has been resolved. This second question need not be reached unless the first question has been answered positively.

In determining whether the exemption provides a basis for avoiding the lien, § 522(f) turns our attention towards the exemption to which the debtor would have been entitled at the time the lien "fixed." In *United States* v. *Security Industrial Bank*, 459 U. S. 70 (1982), this Court was presented with the question whether applying § 522(f)(2) to avoid nonpossessory liens perfected before the enactment of the Bankruptcy Reform Act of 1978 would be a taking of property without compensation in violation of the Fifth Amendment of the Constitution. The Court avoided deciding that precise question by holding that § 522(f) did not apply retroactively to liens that had been perfected before the Bankruptcy Reform Act was enacted. Although there is no such constitutional question presented here, *Security Industrial Bank* establishes that the critical date for determining whether a lien may be avoided under the statute is the date of the fixing of that lien.

The date of the fixing of respondent's lien on petitioner's condominium is therefore controlling in this case. Because it is undisputed that petitioner was not entitled to an exemption when the lien attached, the subsequently acquired exemption does not provide a basis for avoidance of respondent's lien.[4] Thus, the priority question in this case was correctly decided by the Court of Appeals and its judgment should be affirmed.

## II

The Court frames the question it decides as whether the lien avoidance provisions in § 522(f) "can operate when the State has defined the exempt property in such a way as specifically to exclude property encumbered by judicial liens." *Ante*, at 306. That is an accurate description of the issue that has arisen in cases concerning the avoidability of nonpossessory, nonpurchase-money liens on household goods. See cases cited, *ante*, at 310, nn. 1 and 2.[5] In each of those cases the State's definition of the exemption purported to

---

[4] I recognize that in reading the text of § 522(f), it is possible to find ambiguity in the timing issue from the placement of the phrase "under subsection (b) of this section." As I understand the interaction between § 522(b) and § 522(f), however, those words merely define the exempt property for the purposes of determining the priorities between the debtor and secured creditors—namely the *kinds of exemptions* that may justify an avoidance. The fact that § 522(b) itself refers to the status of the lien at the time of bankruptcy for the purpose of identifying the property as exempt from the claims of general creditors is simply irrelevant to the priority question posed under § 522(f). The Court's statement, *ante*, at 314, n. 6, that "[w]e follow the language of the Code" ignores this point, ignores our holding in *United States* v. *Security Industrial Bank*, 459 U. S. 70 (1982), and ignores our holding in *Farrey* v. *Sanderfoot, ante*, p. 291.

[5] Two of these cases, however, do address different issues. *In re Brown*, 734 F. 2d 119 (CA2 1984), involved a judicial lien. In that case the issue was whether the debtor could avoid a judicial lien on his homestead after a foreclosure sale where New York law did not allow an exemption on the proceeds of a foreclosure sale. *In re Thompson*, 750 F. 2d 628 (CA8 1984), was concerned with the issue of whether a debtor could avoid a lien on a Nebraska exemption on livestock under § 522(f)(2).

exclude property interests that were subject to otherwise avoidable liens under § 522(f). Thus, the State's definition of the exemption itself defeated the purpose of the federal lien avoidance provisions by narrowing the category of exempt property.[6]

The majority and dissenting opinions in *In re McManus*, 681 F. 2d 353 (CA5 1982), adequately identify the issue to which the Court's opinion today is addressed. In that case a finance company (AVCO) held a promissory note secured by a nonpossessory, nonpurchase-money security interest in the form of a chattel mortgage on some of the debtor's household goods and furnishings. The debtors sought to avoid AVCO's lien under § 522(f) on the ground that their household goods and furniture were exempted under § 522(b). The Bankruptcy Court and the District Court refused to avoid the lien. The Court of Appeals, following the reasoning of the Bankruptcy Court, affirmed.[7] Louisiana had established a homestead exemption for certain household goods and furniture. Yet, it had also explicitly established in a separate code provision that notwithstanding its definitions of homestead exemptions, any household goods or furniture encumbered by a mortgage are not exempt property. The majority of the Court of Appeals held that the liens were not avoidable because the State of Louisiana had utilized its authority under § 522(b) to define its exemptions to exclude household goods

---

[6] In this case, in contrast, Florida's definition of its household exemption excluded petitioner's property because it was not used as a family residence at the time his former spouse's lien attached. The subsequent broadening of Florida's homestead exemption was not even arguably intended to protect the interest of lienholders or to defeat the purposes of the federal lien avoidance provisions.

[7] Another case with similar facts, *Blazer Financial Services, Inc.* v. *Gipson* was consolidated with *In re McManus* before the Court of Appeals. The debtors were a married couple who had filed a petition in bankruptcy and sought to avoid a finance company's nonpossessory, nonpurchase-money security interest in their household goods. See 681 F. 2d, at 355.

subject to mortgages; hence the liens did not impair an exemption to which the debtors would have been entitled under § 522(b).

Under my reading of § 522(f), the Court of Appeals erred because it focused its attention entirely on the situation at the time of the bankruptcy. If it had analyzed the case by noting that at the time AVCO's lien attached, the debtors were already entitled to an exemption, it should have concluded that the lien was avoidable. The dissenting judge came to that conclusion by correctly recognizing that the statutory text evidences an intent to consider the situation at the time of attachment. He wrote:

"The opening phrase of § 522(f), '[n]otwithstanding any waiver of exemptions,' indicates that the subsection's import is to return the situation to the status quo ante, i.e., prior to any improvident waiver of an exemption by the debtor. When the debtors entered the creditors' office they enjoyed an exemption under Louisiana law from seizure and sale of their household goods; and when they left the office they could no longer claim an exemption for those goods solely because they had improvidently granted a security interest to the creditors covering such goods. I fail to see how this could be characterized as anything but a waiver of exemptions, subject to the avoiding power found in § 522(f)." *Id.*, at 358.[8]

---

[8] Judge Dyer buttressed his conclusion by reference to the legislative history:

"This is clearly indicated in S. Rep. No. 95–989, 95th Cong., 2d Sess. 76, U. S. Code Cong. & Admin. News 1978, pp. 5787, 5862:

"'[To] protect the debtors' exemptions, his discharge, and thus his fresh start, . . . [t]he debtor may avoid . . . to the extent that the property could have been exempted in the absence of the lien . . . a nonpossessory, non-purchase-money security interest in certain household and personal goods.'

"Thus it was Congress's clear intent that a debtor benefit to the fullest extent possible exemptions granted to him by applicable state laws, even when he may have improvidently waived such exemptions. It is equally clear that Congress was particularly concerned with eradicating certain un-

Although the Court's opinion today resolves the question that was presented in *McManus* by adopting the position of the dissent in *McManus*, I disagree with the Court's reasoning. The Court simply overlooks the fact that for purposes of determining whether a lien is avoidable—rather than for the purpose of determining the extent to which the lien should be avoided—the question whether the debtor "would have been entitled" to an exemption is addressed to the state of affairs that existed at the time the lien attached.

Finally, I must comment on the Court's conclusion "that Florida's exclusion of certain liens from the scope of its homestead protection does not achieve a similar exclusion from the Bankruptcy Code's lien avoidance provision." *Ante*, at 313–314. This statement treats Florida's refusal to apply its broadened homestead exemption retroactively as the equivalent of Louisiana's narrowing definition of its household goods exemption to exclude properties subject to a chattel mortgage. The conclusion is flawed. Petitioner would not have been entitled to a homestead exemption at the time respondent's judicial lien attached; for that reason the lien avoidance provisions in § 522(f) of the Bankruptcy Code are not applicable. I would therefore affirm the judgment of the Court of Appeals.

---

conscionable creditor practices in the consumer loan industry." *In re McManus*, 681 F. 2d, at 358.