**In re William D. & Susan C. KOEHLER, Debtors.**

**No. 94–10144 B.**

United States Bankruptcy Court, W.D. New York.

May 19, 1994.

Barry H. Sternberg (Kirk D. Fox, of counsel), Buffalo, NY, for debtors-movants.

Harold P. Bulan, Buffalo, NY, for Heritage Nat. Bank.

Mark E. Saltarelli, Tonawanda, NY, for Follman Properties Co.

CARL L. BUCKI, Bankruptcy Judge.

The debtors in this proceeding have moved under 11 U.S.C. § 522(f) to avoid certain judicial liens which impair the debtors' homestead exemptions. At issue is the extent to which a junior unavoidable tax lien will impact upon this right of avoidance.

William and Susan Koehler filed a joint petition for relief under Chapter 7 of the Bankruptcy Code on January 21, 1994. At that time, they held title to their residence at 6050 Whitegate Crossing in the Town of Amherst, New York. As permitted under New York law,[1] the debtors each claimed a $10,000 homestead exemption with respect to their interests in this real property. Encumbering the property were the following liens:

(1) A first mortgage held by First Federal Savings and Loan Association of Rochester, having a principal balance of $108,182.08. This mortgage was recorded on November 10, 1983.

(2) The judgment lien of Heritage National Bank, in the principal amount of $110,049.12. This judgment lien was perfected on July 24, 1990.

(3) The judgment lien of Follman Properties Company, in the principal amount of $61,717.32. This judgment lien was perfected on January 23, 1992.

(4) A federal tax lien in the principal amount of $96,880.07. To perfect this lien, the Internal Revenue Service filed the requisite notice on January 12, 1993.

The debtors now seek to avoid the judgments of both Heritage National Bank and Follman Properties Company. They contend that the real property has a fair market value of $200,000, that the first mortgage and federal tax lien fully encumber this value, and that accordingly, the two judgment liens should be deemed to impair their homestead exemptions. Both of the judgment lienors strenuously object. Heritage National Bank contends that avoidance of its lien would dishonor the statutory priority which state law accords to it as against the subsequent

tax lien. Both creditors further assert that the homestead exemption is impaired not by the judgments, but by the federal tax lien. It is argued that because the debtors cannot avoid that tax lien, the prior judgment liens are to be preserved.

Courts have suggested a number of formulae to define the scope for application of the avoidance powers of section 522(f). It is not necessary at this time to review these alternatives, as several commentators have already compiled excellent summaries and assessments of them.[2] In contrast to many of these interpretations, however, this Court believes that the statute requires the application of a simple test of impairment.

█ Section 522(f) of the Bankruptcy Code is clear in establishing that a debtor "may avoid the fixing" of certain liens "to the extent that such lien impairs an exemption to which the debtor would have been entitled . . . ." To obtain relief under this section, debtors must satisfy a two part test. They must demonstrate first, that the lien impairs an exemption and second, that the lien is of the type that is subject to avoidance.

An exemption is an inchoate interest in the totality of an asset. It becomes impaired only when liens begin to exceed the nonexempt value, that being an amount equal to the value of the asset less the amount of exemption as allowed by statute. For this reason, a motion for relief under section 522(f) will always require some proof of the value of the asset as of the date of bankruptcy filing. In determining whether a particular lien creates an impairment in whole or in part, the Court must also honor state law regarding lien priorities. The test of impairment is whether any portion of the underlying encumbrance constitutes a lien which, under applicable rules of priority, could not be satisfied without precluding the debtor's retention of the value of his or her exemption. Unless an encumbrance can be satisfied from a homestead's non-exempt value, it

---

1. N.Y.CIV.PRAC.L. & R. 5206.

2. *See e.g.,* Robert H. Bowmar, *Avoidance of Judicial Liens That Impair Exemptions in Bankruptcy: The Workings of 11 U.S.C. § 522(f)(1),* 63 AM. BANKR.L.J. 375 (1989); Margaret Howard, *Multiple Judicial Liens in Bankruptcy: Section 522(f)(1) Simplified,* 67 AM.BANKR.L.J. 151 (1993); Donna L. Seiden, *Judicial Lien Avoidance and The Homestead Exemption,* 3 J.Bankr.L. & Prac. 319 (1994).

will necessarily impair the debtor's exemption.

■ The present facts illustrate the proper application of the standard for relief under section 522(f). The debtors' residence has a fair market value of $200,000.[3] Thus, their exemptions will not be impaired until liens totalling $180,000 attach to the property. The Court must refer to state rules of priority to identify the first $180,000 of liens that can be honored without impairing the debtors' exemptions. Any liens of a lesser priority will create an impairment and are therefore potentially subject to avoidance under section 522(f).

In the present instance, the first lien is the mortgage of First Federal Savings and Loan Association of Rochester, in the amount of $108,182.08. After fully crediting this amount against the value of the collateral, the debtors retain impairable equity totalling $71,817.92 (calculated by subtracting the first lien of $108,182.08 from the $180,000 of property value against which liens may attach without impairing the homestead exemption). Under applicable state law, the second lien is that of Heritage National Bank, in the principal amount of $110,049.12. As this sum will fully exhaust the impairable equity, this Court must bifurcate the lien. The first part, in the amount of $71,817.92, is deemed to attach to value other than that reserved for the debtors' exemptions. The second part, in the amount of $38,231.20, plus accrued pre-petition interest, impairs the exemptions, and accordingly, might be subject to avoidance. For similar reasons, all lesser liens (including that of both Follman Properties Company and the Internal Revenue Service) also impair the debtors' exemptions.

Having identified the liens which impair the debtors' exemptions, the Court must ascertain whether the debtors satisfy the sec-

ond part of the required test, that these liens be subject to avoidance. Section 522(f) authorizes avoidance of only two types of liens: judicial liens and certain kinds of non-possessory, nonpurchase-money security interests. Both Heritage National Bank and Follman Properties Company possess judicial liens. Accordingly, the debtors may avoid the second portion of the Heritage judgment and the entire judgment of Follman Properties Company. On the other hand, the Internal Revenue Service holds a tax lien. Not subject to avoidance, it will survive in full as a lien against the property interests of the debtors.

Respondents contend that the Court's approach will permit the Internal Revenue Service to "slide up" into a priority higher than that which state law would otherwise recognize. Such a concern would have held credence if the Court had accepted the debtors' suggestion that judgments be avoided to create non-exempt equity against which the tax lien could attach. As stated earlier, the debtors possess no statutory right to so distort state rules of lien priority. In contrast, the decision of this Court does not effect a "slide up" of secured position. Quite simply, the avoided liens had no equity against which to attach.[4] Based on the valuation of the collateral, the avoided liens were unsecured except possibly with respect to an exemption. It is as to that exempt interest, and as to that exempt interest only, that the debtors now receive the benefit of lien avoidance pursuant to section 522(f) of the Bankruptcy Code.

In determining the allocation between exempt and impairable interests, section 522(f) necessarily focuses upon values as of the date of the filing of the bankruptcy petition.[5] The Court recognizes that due either to postpeti-

---

3. Although counsel for Follman Properties Company urges that a formal appraisal be obtained, the Court is satisfied with the reasonableness of the debtors' valuation. This valuation is also consistent with an appraisal obtained by the other judgment creditor, Heritage National Bank.

4. Accordingly, this decision is consistent with 11 U.S.C. § 506(d), which would have provided a basis to avoid all but $20,000 of the liens being avoided hereby. The present decision, however, is not dependent upon section 506(d).

5. Reflecting this principle, section 522(a) defines value as "fair market value as of the date of the filing of the petition or, with respect to property that becomes property of the estate after such date, as of the date such property becomes property of the estate." Furthermore, section 522(b)(2)(A) states that exempt property is to be determined "on the date of the filing of the petition." *See Owen v. Owen*, 500 U.S. 305, 314 n. 6, 111 S.Ct. 1833, 1838 n. 6, 114 L.Ed.2d 350 (1991).

tion appreciation or depreciation, this frame of reference may distort the benefits which the debtors actually derive from their exemptions. By the time that the property is sold, market factors may cause the debtors to realize either less or more than their full exemptions. Similarly, value fluctuations may affect recoveries on account of unavoided liens. Declining property values will jeopardize even those liens that did not impair the debtors' exemptions on the day of filing. On the other hand, property appreciation may enable recovery on account of liens which were not eligible for avoidance even though impairing the debtors' homestead exemptions. The concept of a fresh start dictates, however, that the debtors retain both the potential for and the risk of such distortion. Indeed, homestead exemptions represent a desire to preserve not a fixed amount of cash, but a real property interest entailing normal incidents of ownership, including the opportunity, amidst the environment of a fresh start, to build equity and to reestablish one's financial security. Although this may ultimately enhance the secured status of an unavoided lien, it does not create a "slideup" of lien position with respect to asset values in existence as of the date of bankruptcy filing. Rather, the potential for such lien enhancement is simply an inherent attribute of ownership of property subject to an unavoided encumbrance.

Finally, respondents question whether the holding of this Court is consistent with other decisions in this district that have limited the avoidance of intervening judgment liens affecting property encumbered with a subsequent voluntary mortgage.[6] These previous decisions were based upon two premises: that lien avoidance would distort the state law scheme of lien priority, and that the subsequent voluntary mortgage constituted a binding acceptance of the intervening judgments. For the reasons stated above, this Judge disavows the first of these rationales. The second rationale is not presently applicable, as the subsequent tax lien does not arise from any voluntary acknowledgement by the debtors. Whether a voluntary mortgage might constitute a binding ratification of in-

tervening judgments is an issue not now before this Court and is best reserved for future consideration.

For the reasons stated herein, the debtors' motion is granted only to the extent that it seeks to avoid the lien of Follman Properties Company, and to avoid that portion of the lien of Heritage National Bank which exceeds $71,817.92. The balance of Heritage National Bank's lien is preserved.

So Ordered.

---

6. *See* for example *In re Williams (Williams v. National Fuel Gas)*, No. 89–12276 (Bkrtcy. W.D.N.Y. Feb. 7, 1990); *In re Webber (Webber v. Citibank)*, No. 93–13294 (Bkrtcy.W.D.N.Y. Jan. 26, 1994).