USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1152

 ROBERT E. NELSON,

 Plaintiff, Appellant,

 v.

 JOSEPH SCALA, SR.,

 Defendant, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. Gene Carter, U.S. District Judge]

 Before

 Torruella, Chief Judge,
 
 Hill, Senior Circuit Judge,
 
 and Boudin, Circuit Judge.
 
 
 
 
 Daniel L. Cummings and Norman, Hanson & DeTroy, LLC on brief
for appellant.
 Ray R. Pallas and Law Office of Ray R. Pallas on brief for
appellee.

October 1, 1999

 
 
 BOUDIN, Circuit Judge. On June 15, 1997, Robert Nelson,
the appellant in this court, petitioned for bankruptcy protection
under chapter 7 of the Bankruptcy Code, 11 U.S.C. 701 et seq. 
The petition was filed jointly with his wife Donata Nelson. Among
the assets of the estate is the Nelsons' interest in their
Portland, Maine residence, of which each is a 50-percent owner. 
The bankruptcy court has valued the residence--around which this
appeal centers--at $185,000. (In giving figures throughout, we
disregard pennies and round out to the nearest dollar.)
 Section 522(b) of the Bankruptcy Code, 11 U.S.C. 
522(b), allows a debtor to exempt from his estate property exempt
under state or local law. Maine, in which the Nelsons are
apparently domiciled, exempts the debtor's interest in his
residence but only up to the amount of $12,500. 14 M.R.S.A. 
4422. Even this modest amount is not automatically secure because
the exemption, standing alone, merely protects the assets from
distribution to the general creditors; the exemption itself is not
deemed to nullify liens that give secured creditors a security
interest in property. Dewsnup v. Timm, 502 U.S. 410, 418 (1992);
Owen v. Owen, 500 U.S. 305, 308 (1991).
 However, in 1978, Congress separately provided that the
debtor may "avoid" certain liens under certain circumstances where
the lien would "impair an exemption," Bankruptcy Reform Act of
1978, Pub. L. No. 95-598, 522(f), 92 Stat. 2549, 2589 (1978)
(codified as amended at 11 U.S.C. 522(f)); and it later adopted
a definition of this impairment concept. Bankruptcy Reform Act of
1994, Pub. L. No. 103-394, 303, 108 Stat. 4106, 4132 (1994)
(codified at 11 U.S.C. 522(f)(2)(A)). Ordinary real property
mortgages are not avoidable but among liens that may be avoided are
most (although not all) "judicial liens," such as those imposed to
secure an ordinary civil judgment. 11 U.S.C. 522(f)(1)(A).
 On August 11, 1997, Robert Nelson invoked this avoidance 
provision by requesting the bankruptcy court to avoid in their
entirety two existing judicial liens held by Joseph Scala in the
amount of $24,000 against Robert Nelson's interest in the
residence; this amount was owed to Scala by Robert Nelson alone and
Donata Nelson's interest in the property was not subject to the
Scala liens. No challenge was made to four other mortgages upon,
and a tax lien against, the property, totaling $134,626 and
representing joint obligations of both Nelsons. Thus, apart from
the Scala liens, the Nelsons' net equity in the residence was only
$50,374 ($185,000-$134,626). 
 In due course, the bankruptcy court ruled that Robert
Nelson was entitled to avoid the Scala liens only to the extent
necessary to preserve $12,500 for Robert Nelson out of his half of
the couple's net equity; since his share of the couple's net equity
was $25,187 (50% of $50,374), the court ordered the Scala liens 
avoided in the amount of $11,313, leaving $12,687 encumbered for
Scala and $12,500 for Robert Nelson. The district court affirmed,
Nelson v. Scala, 229 B.R. 262 (D. Me. (1998)), and Robert Nelson
now seeks review in this court, urging that he is entitled to have
the Scala liens set aside in their entirety.
 At first blush, Robert Nelson's claim appears to be
overreaching because the evident purpose of the avoidance provision
was to permit him to keep free of judicial liens only his exempt
property and Robert Nelson's exemption as to his residence is only
$12,500. While the Scala liens must be avoided in part to allow
Nelson this amount (otherwise they would capture $24,000 of Robert
Nelson's $25,187 equity), avoiding the liens in full would appear
either to give Robert Nelson a windfall or enrich the general
creditors at the expense of Scala as a secured creditor. One would
expect that the differential would go to the general creditors (see
discussion below) although Robert Nelson may be litigating this
case on the basis of a contrary assumption.
 Nevertheless, Robert Nelson's claim to full avoidance of
the Scala liens rests on statutory language, presenting a legal
issue subject to de novo review in this court. Strickland v.
Commissioner, Me. Dep't of Human Servs., 96 F.3d 542, 545 (1st Cir.
1996). This claim is based on the peculiar language that Congress
adopted in defining the concept of "impairment" of an exemption for
purposes of section 522(f). Section 522(f)(2)(A) provides:
 For the purposes of this subsection, a lien
 shall be considered to impair an exemption to
 the extent that the sum of--

 (i) the lien;

 (ii) all other liens on the property; 
 and
 
 (iii) the amount of the
 exemption that the debtor could
 claim if there were no liens on
 the property;

 exceeds the value that the debtor's interest
 in the property would have in the absence of
 any liens.

11 U.S.C. 522(f)(2)(A).
 Robert Nelson points out that under this formula "the
lien" sought to be avoided is $24,000; "all other liens" on the
property total $134,626; and "the amount of the exemption" absent
any liens is $12,500. The "sum" of these three figures-- $171,126-
-exceeds "the debtor's interest in the property in the absence of
any liens"--here, $92,500 (50% of $185,000)--by almost $80,000. 
Thus, says Robert Nelson, the courts must treat the Scala liens as
impairing the exemption "to the extent" of this differential, which
(at almost $80,000) greatly exceeds the Scala liens ($24,000) in
their entirety. If the statute were taken literally, this would
render the Scala liens liable to avoidance in full.
 Such a result would need some explaining. Exemptions
serve the "fresh start" aim of the bankruptcy statute, as well as
other social ends, by preserving certain assets--like an interest
in the bankrupt residence or the debtor's work tools--against most
claims by general creditors. But, as already noted, under the Code
exemptions do not themselves defeat security interests in property. 
An expressed purpose of Congress in enacting section 522(f)'s
avoidance provision was to prevent unsecured creditors from
bypassing exemptions simply by converting their claims into
judicial liens and obtaining security interests in otherwise exempt
property. H.R. Rep. No. 95-595, 126-27 (1977), reprinted in 1978
U.S.C.C.A.N. 5963, 6087-88.
 This aim--to protect the debtor's exemption--is fully
achieved by allowing Robert Nelson to avoid the Scala liens in
part, as ordered by the district court, since this would free up
for Nelson his full $12,500 exempt interest. Yet, mechanically
applied, the formula in section 522(f)(2)(A) perversely seems to
call for avoidance of the Scala liens in full and to Scala's
disadvantage. Courts are not required to follow literal language
where it would produce an outcome at odds with the purpose of
Congress and where the result stems merely from an unintended quirk
in drafting. E.g., Sagansky v. United States, 358 F.2d 195, 201
(1st Cir.), cert. denied, 385 U.S. 816 (1966). 
 The legislative history of the amendment that added the
(2)(A) formula to subsection (f) is instructive. The House report
makes clear that Congress was dissatisfied with the results reached
by pre-amendment decisions in four cases interpreting section
522(f) and was adopting the new formula to alter the results. H.R.
Rep. No. 103-835, 52-54 (1994), reprinted in 1994 U.S.C.C.A.N.
3340, 3361-63. For each scenario, the report cites the case and
explains why Congress proposed to change the outcome for future
cases. Id. But in each of the scenarios, the court's result (to
be overruled by the amendment) in some fashion impaired an
exemption or an exempt interest in property to the disadvantage of
the debtor; and in none did the scenario resemble that presented by
Robert Nelson's case.
 As already shown, the partial avoidance of the Scala
liens ordered by the district court leaves exactly $12,500 for
Robert Nelson as exempt property not subject to any lien. See note
3, above. Further, were the Scala liens to be avoided in full, the
Maine exemption would still entitle Robert Nelson to keep only
$12,500; the balance of his remaining equity (after the mortgages
and tax lien) seemingly would go to satisfy general creditors,
including among others the now unsecured Scala claim. It serves no
known purpose of the 1994 amendment merely to rearrange priorities
among creditors.
 Where Congressional language diverges from apparent
purpose, no simple answer tells the court which path to follow in
interpreting the statute. More than one variable bears on the
choice--explicitness of language, clarity of purpose, explanation
for the discrepancy between them, the unfairness or anomaly worked
by the literal application--and each is a matter of degree. But
along with much else, judging involves making such judgments,
always difficult where Congress did not focus upon the precise
problem before the court. Here, a literal reading of the formula
produces a measure of lien avoidance that goes beyond the
protection that Congress sought to provide for the debtor and
simply distorts priorities as between creditors.
 There is no circuit precedent directly in point. Scala
says that we rejected a "formalistic" (i.e., literal) reading of
the formula in In re Silveira, 141 F.3d 34, 36-38 (1st Cir. 1998). 
But while Silveira stressed the same practical concerns that we do,
the opinion was also able to square its result with the formula's
language. See In re Silveira. That is harder to do in this case
where (unlike Silveira) a literal application of the formula
produces an outcome at odds with statutory purpose. This contrast
is apparent if one troubles to insert into the statutory formula
the figures from each case.
 The reason why the statutory formula does not quite
"work" in our case has to do with the asymmetry of obligations as
between Robert Nelson and his wife (remember that both are
obligated on five of the debts but only Robert is liable on the
statutory liens). As the bankruptcy and district courts proved in
their respective opinions, it is possible to adjust for this
asymmetry--each judge used a different adjustment--to produce the
partial avoidance result that we affirm. But it is not clear that
either adjustment will work in every variant case; and neither
really avoids the charge that the court is departing from a literal
reading of the formula.
 However, the result reached by the bankruptcy and
district courts achieves Congress's aim to protect in full (but
only in full) Robert Nelson's exempt interest in his residence. To
go beyond this would work an injustice to Scala, provide a windfall
to other creditors, and (so far as we can tell) fail to benefit
Robert Nelson at all, let alone benefit him in any way intended by
Congress. In these circumstances, we think that the departure from
literal language--always a step to be taken with hesitation--is
nevertheless well justified.
 Affirmed.