**In re Sheila A. JONES, Debtor.**

No. 02–16195.

United States Bankruptcy Court, S.D. Ohio, Western Division.

Oct. 14, 2003.

Gene A. Stagnaro, Cincinnati, OH, for Debtor.

## MEMORANDUM OF DECISION ON MOTION TO AVOID JUDGMENT LIEN

JEFFERY P. HOPKINS, Bankruptcy Judge.

This matter is before the Court on The Debtors' [sic] Motion to Avoid the Certified Judgment Lien of LPP Mortgage Ltd. Under 11 U.S.C. 522 ("Motion") (Doc. 18). Following an evidentiary hearing on the Motion, the parties filed a Stipulations of Evidence for Purposes of Hearing ("Stipulation") (Doc. 35) whereby certain facts and exhibits have been stipulated.[1]

The ultimate issue before the Court is whether a judgment lien of LPP Mortgage, Ltd. ("LPP") on the Debtor's residence impairs the Debtor's homestead

---

1. The Court commends counsel for their efforts in this contested matter. From the filing of pre-trial briefs, post-trial briefs and the Stipulation to the trial litigation and oral argument, the attorneys have been nothing short of the embodiment of zealous representation and professionalism.

exemption. Although the parties have stipulated to the value of various encumbrances against the property, there are some sub-issues of law that must be resolved before the impairment calculation can be performed. There is a second mortgage on the residence that was recorded prior to the LPP judgment. LPP contends that the second mortgage constitutes a fraudulent conveyance under Ohio law and should be disregarded in the impairment calculation. Therefore, the subissues presented by LPP are: (1) whether fraudulent, yet unavoided, liens are to be considered in the impairment calculation under 11 U.S.C. § 522(f)(2)(A); and if not (2) whether the second mortgage in this case constitutes a fraudulent conveyance under Ohio law.

## FACTS

Beginning in 1996, the Debtor and her husband constructed and operated a banquet hall in northern Kentucky. In the process, they obtained a loan from the Small Business Administration ("SBA"), secured by a second mortgage on the banquet hall. LPP is the assignee of the SBA.

The business was not successful. In December of 1998, the Debtor's daughter, Dawn Duncan, began to advance funds to the Debtor and her husband. Over the next nine months, Ms. Duncan advanced $42,200. Nonetheless, by December of 1999, it was apparent to the Debtor that the banquet hall must be sold to repay creditors. That month Ms. Duncan performed various services at the banquet hall to prepare it for sale. Ms. Duncan testified that she provided $3,860 worth of labor in the form of painting, wallpapering and the replacement of ceiling tiles.

The first mortgagee on the banquet hall, the Cincinnatus Savings and Loan Company ("Cincinnatus"), commenced a foreclosure action on June 28, 2000. The action was set for a November 22, 2000 trial date. Five days before trial, on November 17, 2000, the Debtor and her husband conveyed to Ms. Duncan a mortgage on their personal residence in Hamilton County, Ohio, to secure what the mortgage purported to be a $61,000 debt. The Debtor, being a realtor, prepared the mortgage. There is no promissory note that evidences the debt.

Ms. Duncan did not record her mortgage for several months. In the meantime, on February 26, 2001, both Cincinnatus and the SBA obtained judgments against the Debtor and her husband in the banquet hall foreclosure action. A foreclosure sale of the banquet hall was scheduled for May 1, 2001. Six days before the sale, on April 25, 2001, Ms. Duncan recorded her mortgage on the Debtor's personal residence.

The foreclosure sale did not yield sufficient funds to satisfy the SBA judgment. LPP, having been assigned the SBA judgment on April 18, 2001, registered its judgment in Hamilton County, Ohio, and obtained a certificate of judgment against the Debtor's personal residence on July 9, 2001.

The parties stipulate that "[t]he Debtor received cash from Ms. Duncan of a value roughly equivalent to the amount of the Duncan Mortgage; however, all of the cash and services were received substantially prior to the Duncan Mortgage." Stipulation at ¶ 14. One additional stipulation simplifies the impairment calculation under § 522(f)(2)(A). The parties stipulate that if the Duncan mortgage constitutes a fraudulent conveyance under Ohio law, then the LPP judgment lien cannot be avoided. Stipulation at ¶ 13. On the other hand, if the Duncan mortgage does not constitute a fraudulent conveyance, then the LPP judgment lien is subject to avoidance. *Id.*

## ARE FRAUDULENT BUT UNAVOIDED LIENS INCLUDED IN IMPAIRMENT CALCULATION?

■ LPP argues that the Duncan mortgage should not be included in the § 522(f)(2)(A) impairment calculation because it constitutes a fraudulent conveyance under Ohio law. The Debtor contends that § 522(f)(2)(A)(ii) contains no such limitation on the liens to be counted against the property. Section 522(f)(2)(A) provides:

> For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—
>
> > (i) the lien,
> >
> > (ii) all other liens on the property; and
> >
> > (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

LPP takes the position that § 522(f)(2)(A)(ii), by implication, counts only valid liens against the property even though Congress did not expressly qualify the words "other liens" with the word "valid."

The case of *In re Brantz*, 106 B.R. 62 (Bankr.E.D.Pa.1989) is dispositive of this issue. *Brantz* involved debtors that sought to avoid the judicial lien of Meritor Financial Services, Inc. ("Meritor") pursuant to § 522(f)(1). Meritor responded by attacking a prior mortgage executed by the debtors in favor of the debtor-wife's parents ("the Schleys"). The debtors borrowed funds from Meritor for a business operated by the debtor-husband. The debtors defaulted on the loan. On August 9, 1988, Meritor accelerated the debt and notified the debtors that it would be filing a collection action. Seven days later, on August 16, 1988, a mortgage in favor of the Schleys was recorded on the debtors' home. Thereafter, Meritor obtained a judgment against the debtors and a judicial lien on their home. Meritor argued that the Schley mortgage constituted a fraudulent conveyance. The debtors disagreed, based upon Mr. Schley's testimony that he made $140,000 in loans to the business prior to the mortgage. None of the alleged loans were documented. The Court concluded, based upon its finding of several badges of fraud, that Schley mortgage constituted a fraudulent transfer that was not to be included in the impairment calculation under § 522(f).

There is one significant distinction between *Brantz* and the instant matter-Meritor responded to the § 522(f) motion by seeking leave to file an adversary proceeding to avoid the Schley mortgage. Thereafter, the parties stipulated that: (1) Meritor possessed standing to avoid the mortgage; (2) the § 522(f) hearing would also include the issue of whether Meritor could avoid the Schley mortgage. Although LPP litigated the fraudulent conveyance issue before this Court, it did so to demonstrate that the Duncan mortgage was fraudulent under Ohio law. The parties have not stipulated that, if so established, this Court is authorized to enter an order avoiding the Duncan mortgage.

Nonetheless, *Brantz* still provides that such a mortgage should not be considered under the § 522(f)(2)(A) impairment calculation. *Brantz* set forth the following formula to perform the impairment calculation:

1. Determine the value of the property on which a judicial lien is sought to be avoided.

2. Deduct the amount of *all liens not to be avoided* from (1).

3. Deduct the Debtors' allowable exemptions from (2).

4. Avoidance of all judicial liens results unless (3) is a positive figure.

5. If (3) does result in a positive figure, do not allow avoidance of liens, in order of priority, to that extent only[.]

*Brantz*, 106 B.R. at 68 (emphasis added). This Court reads the emphasized language in step two to mean that avoidable liens do not first need to be avoided before being excluded from the § 522(f)(2)(A) impairment calculation. This construction is further supported by the following chart employed in *Brantz*:

| Value of Property: | $65,000 |
| *Unavoidable* liens: | (38,000) |
| Exemptions: | (15,800) |
| Amount which cannot be avoided | $12,200 |

*Brantz*, 106 B.R. at 68 (emphasis added). If the *Brantz* calculation required the lien to be avoided before it is excluded from the impairment calculation, the second line of the chart emphasized above would provide "Avoided liens" instead of "Unavoidable liens."

Lastly, this Court is confident that the *Brantz* analysis of the impairment calculation reflects Congress' intent under § 522(f)(2)(A) because the legislative history to the 1994 amendment of § 522—adding § 522(f)(2)—provides:

Because the Bankruptcy Code does not currently define the meaning of the words "impair an exemption" in section 522(f), several court decisions have, in recent years, reached results that were not intended by Congress when it drafted the Code. *This amendment* [adding § 522(f)(2)] *would provide a simple arithmetic test to determine whether a lien impairs an exemption, based upon a decision, In re Brantz, 106 B.R. 62 (Bankr.E.D.Pa.1989) that was favorably cited by the Supreme Court in Owen v. Owen, 500 U.S. 305, 111 S.Ct. 1833, 1838, n. 5, 114 L.Ed.2d 350.*

H.R.Rep. No. 103–835, at 52 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3361 (emphasis added). Accordingly, this Court concludes that the Duncan mortgage should not be included in the § 522(f)(2)(A) impairment calculation if it constitutes a fraudulent conveyance under Ohio law.

### IS THE DUNCAN MORTGAGE A FRAUDULENT CONVEYANCE UNDER OHIO LAW?

The facts of this case, like those in *Brantz*, exhibit a number of badges of fraud. However, there is one critical distinction between the cases in this regard: LPP and the Debtor have stipulated that "[t]he Debtor received cash from Ms. Duncan of a value roughly equivalent to the amount of the Duncan Mortgage[.]" Stipulation at ¶ 14. Fair consideration is an absolute defense to a fraudulent conveyance action under Ohio law. "Once the creditor proves the requisite elements, the debtor then has the opportunity to rebut the presumption of a fraudulent transfer by demonstrating that the transaction was made for fair value or consideration." *Lesick v. Medgroup Mgmt., Inc.*, Nos. C–990097, C–990100, 1999 WL 979136 at *5, 1999 Ohio App. LEXIS 5049 at *16 (Ohio Ct.App. Oct.29, 1999); *accord Cardiovascular & Thoracic Surgery v. DiMazzio*, 37 Ohio App.3d 162, 165–66, 524 N.E.2d 915 (Ohio Ct.App.1987). Both the Sixth Circuit and the Sixth Circuit BAP have construed Ohio law in the same regard. *Valley–Vulcan Mold Co. v. Ampco–Pittsburgh Corp. (In re Valley–Vulcan Mold Co.)*, 237 B.R. 322, 331 (6th Cir. BAP 1999); *aff'd*, 5 Fed.Appx. 396 (6th Cir.2001).

Ohio Rev.Code § 1336.03 provides that "[v]alue is given for a transfer ... if, in exchange for the transfer ... an antecedent debt is secured[.]" Given the parties' stipulation and the plain language of § 1336.03 as it applies to the facts of this case, the Court concludes that the Duncan

mortgage does not constitute a fraudulent conveyance under Ohio law.

### CONCLUSION

Because the second mortgage held by Ms. Duncan does not constitute a fraudulent conveyance under Ohio law, it must be included in the § 522(f)(2)(A) impairment calculation. Because the parties have stipulated that the LPP judgment lien is subject to avoidance under § 522(f)(1) if the Duncan mortgage does not constitute a fraudulent conveyance under Ohio law, *see* Stipulation at ¶ 13, the Court concludes that the LPP judgment lien may be avoided in its entirety as impairing the Debtor's homestead exemption. Accordingly, The Debtors' [sic] Motion to Avoid the Certified Judgment Lien of LPP Mortgage Ltd. Under 11 U.S.C. 522 (Doc. 18) will be **GRANTED**. An order to this effect will be entered.