IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-30700
Summary Calendar
_____

IN THE MATTER OF: WILLIAM DENIS BROWN,III,

Debtor.

_____

HIBERNIA NATIONAL BANK,

Appellant,

v.

WILLIAM DENIS BROWN, III,

Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana
(95-CV-357)
_____
January 19, 1996
Before KING, SMITH, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Hibernia National Bank ("Hibernia") appeals the district

court's affirmance of the bankruptcy court's grant of summary

judgment in favor of debtor William Denis Brown, III ("Brown").

---

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

Hibernia had objected to Brown's claimed exemption of his interest in a pension plan. The summary judgment dismissed Hibernia's objection on the grounds that, where the Internal Revenue Service (the "IRS") had determined that the pension plan was "qualified under the Internal Revenue Code" as required by Louisiana law, the bankruptcy court was precluded from contesting that determination under In re Youngblood, 29 F.3d 225 (5th Cir. 1994). We affirm.

## I. BACKGROUND

Brown created the Brownland Corporation Defined Benefit Pension Plan (the "Pension Plan") in October 1980. The IRS issued determination letters in 1984 and 1993 indicating that the Pension Plan was qualified under the Internal Revenue Code (the "I.R.C."). Brown filed for Chapter 7 bankruptcy on September 21, 1993 in the United States Bankruptcy Court for the Western District of Louisiana. Pursuant to § 522 of the Bankruptcy Code, in his original and subsequently amended bankruptcy schedules, Brown claimed his interest in the Pension Plan as exempt property under Louisiana law, La. Rev. Stat. 13:3881D.

On January 21, 1994, Hibernia, a creditor and party-in-interest,[2] filed an objection to the exemption. Hibernia alleged that Brown's interest in the Pension Plan could not be claimed as

---

[2] Hibernia is the successor of First Commercial Bank and assignee of its claim in the Brown bankruptcy.

an exemption under Louisiana law because the Pension Plan was not tax-qualified under the I.R.C. On November 18, 1994, the bankruptcy court ruled that our decision in Youngblood required it to give deference to the IRS's treatment of the Pension Plan.[3] Therefore, with the proviso that Hibernia retained the right to request an IRS audit of the Pension Plan, the bankruptcy court granted Brown's request for summary judgment and dismissed Hibernia's objection to the exemption of Brown's interest in the Pension Plan. On January 5, 1995, the bankruptcy court issued an amended order that reiterated its November 18, 1994 ruling, adding that, unless the IRS indicated to the bankruptcy trustee its intention to audit the Pension Plan before February 7, 1995, final judgment would be entered dismissing Hibernia's objection. After a hearing on Hibernia's motion to extend the deadline, the reference to the February 7, 1995 deadline was deleted by oral ruling of the bankruptcy court on March 2, 1995.[4] On April 20,

---

[3] Three months earlier, in Youngblood, we held that, under the Texas exemption statute, a bankruptcy court was required to defer to the IRS's determination that a pension plan was tax-qualified. In re Youngblood, 29 F.3d 225, 229 (5th Cir. 1994).

[4] Because the bankruptcy court originally did not enter a formal order memorializing its ruling of March 2, 1995, Brown construed the January 5, 1995 order as interlocutory. When Hibernia subsequently filed a Notice of Appeal, Brown charged that Hibernia had not complied with the requirements for appeal set forth in Rule 5 of the Federal Rules of Appellate Procedure. Accordingly, Brown filed a motion to dismiss this appeal for lack of jurisdiction. On September 8, 1995, however, the bankruptcy court entered an order memorializing its March 2, 1995 ruling and unequivocally dismissing Hibernia's objection to the exemption of

3

1995, the IRS notified Brown that it intended to audit the Pension Plan for the years 1992 and 1993.[5]

In a memorandum ruling dated June 22, 1995, the United States District Court for the Western District of Louisiana affirmed the bankruptcy court's ruling and adopted the reasons assigned by the bankruptcy judge. The district court declined to distinguish this case from <u>Youngblood</u> on the basis of whether or not the IRS performed an audit. Noting that "[t]he IRS has always treated this Pension Plan as tax qualified," the district court found no reason to reverse the bankruptcy court's ruling. This appeal followed.

## II. ANALYSIS

We review de novo the district court's affirmance of the bankruptcy court's legal conclusion that the bankruptcy court was bound by the IRS's determination. <u>In re Southmark, Corp.</u>, 49 F.3d 1111, 1114 (5th Cir. 1995); <u>In re Brocato</u>, 30 F.3d 641, 642 (5th Cir. 1994). Although we benefit from the district court's consideration of the matter, the amount of persuasive power to be

---

Brown's interest in the Pension Plan. Brown has since acknowledged that any jurisdictional defects to this appeal have been cured.

[5] On July 28, 1995, the IRS notified Brown of the results of its audit: The returns submitted for 1992 and 1993 were accepted by the IRS; no additional taxes were assessed; and previous determinations that the Pension Plan was tax-qualified were not revoked.

4

assigned to the district court's conclusion is a matter of appellate discretion.  In re Briscoe Enters., Ltd., II, 994 F.2d 1160, 1163 (5th Cir.), cert. denied, 114 S. Ct. 550 (1993).

Once an action in bankruptcy is commenced, all property in which the debtor has a legal or equitable interest becomes the property of the bankruptcy estate.  11 U.S.C. § 541.  However, a debtor may claim as exempt any property that is exempt under federal, state, or local law.  11 U.S.C. § 522(b).  In this case, Brown claimed an exemption for his individual interest in the Pension Plan under La. Rev. Stats. 13:3881D and 20:33.[6]  These statutes and the corresponding provision in the Bankruptcy Code,[7]

_____

[6]    Under the heading "General exemptions from seizure," the Louisiana Revised Statutes provide:

> The following shall be exempt from all liability
> for any debt except alimony and child support:  all
> pensions, all proceeds of and all payments under
> annuity policies or plans, all individual retirement
> accounts, all Keogh plans, all simplified employee
> pension plans, and all other plans qualified under
> sections 401 or 408 of the Internal Revenue Code.
> However, an individual retirement account, Keogh plan,
> simplified employee pension plan, or other qualified
> plan is only exempt to the extent that contributions
> thereto were exempt from federal income taxation at the
> time of the contribution, plus interest or dividends
> that have accrued thereon.

La. Rev. Stat. 13:3881D(1).  La. Rev. Stat. 20:33 contains language identical to La. Rev. Stat. 13:3881D(1).

[7]    The Bankruptcy Code provides in pertinent part:

(d)  The following property may be exempted under
subsection (b)(1) of this section:
    . . . .
    (10) The debtor's right to receive--

require pension plans to be qualified under the I.R.C. in order to be exempt from seizure.

The bankruptcy court and the district court concluded that Brown's Pension Plan was tax-qualified, based on their respective readings of Youngblood. In that case, the Youngbloods sought to exclude from their Chapter 7 bankruptcy estate the interest that they held in an individual retirement account ("IRA"). The IRA had accepted a rollover contribution from a defined-benefit employee pension plan created by Mr. Youngblood in connection with his construction company. A creditor objected to the claimed exemption on the grounds that the pension plan was not qualified under the I.R.C. as required under Texas law. The bankruptcy court held that the Youngblood's pension plan was not tax-qualified despite two IRS determination letters and an IRS audit to the contrary. The district court affirmed the judgment of the bankruptcy court. We concluded that, regarding the pension plan's tax qualification, the bankruptcy and district

_____

> . . . .
> (E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan . . . to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless--
> . . . .
> (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986.

11 U.S.C. § 522(d)(10)(E)(iii).

courts erred in not deferring to the determination of the IRS. Youngblood, 29 F.3d at 229.

Prior to Youngblood, in In re Goff, 706 F.2d 574 (5th Cir. 1983), abrogated on other grounds by Patterson v. Shumate, 504 U.S. 753 (1992), we suggested that courts must defer to the IRS as to the qualification of self-employed Keogh plans under the Employment Retirement Security Act of 1974 ("ERISA"):

> Although an argument might have been made that the debtors' plan was not qualified, . . . we must accept for purposes of this appeal that the plan was qualified and thus subject to ERISA anti-alienation provisions. Congress has committed the determination of qualification, in the first instance, to the Commissioner of Internal Revenue, and it would therefore be inappropriate for us to pass upon this question.

Goff, 706 F.2d at 580 n.16.

In the instant case, based on Youngblood and Goff, the bankruptcy court determined that it must defer to the IRS's treatment of the Pension Plan as qualified.[8] The IRS treated Brown's Pension Plan as tax-qualified for more than ten years and, consistent with the facts in Youngblood, the IRS issued

---

[8]    The bankruptcy court explained:

[I]n review of how the [Louisiana] state statutes want this issue determined they clearly show, and Youngblood clearly states, they don't want me to do it.  They do not want the state courts to do it.  They, instead, want the IRS to do it because the IRS is that entity which determines whether or not the plans are qualified.  It [en]forces its own regulations . . . and it does so in a timely fashion and it does so in a uniform fashion.

determination letters indicating that the Pension Plan was tax-qualified.[9]  Therefore, the bankruptcy court ruled that Brown's interest in the Pension Plan was exempt from the bankruptcy estate.  The district court adopted the bankruptcy court's rationale and affirmed its ruling.

Hibernia advances three arguments on appeal:  (1) that Youngblood is not controlling with respect to Louisiana law; (2) that Youngblood is relevant only where the IRS has performed a comprehensive audit; and (3) that Youngblood should be overruled because it undermines the statutory duties of the bankruptcy court.  We address these arguments seriatim.

First, Hibernia proposes that Youngblood is not controlling with respect to Louisiana law.  Hibernia contends that it was error for the district court to affirm the bankruptcy court's conclusion that Youngblood applies not only to the Texas exemption statute but to La. Rev. Stats. 13:3881D(1) and 20:33 as well.  Despite the language of the relevant Louisiana and Texas statutes--language equivalent on its face,[10] Hibernia attempts to

_____

[9]    Additionally, after auditing the Pension Plan for the years 1992 and 1993, the IRS let stand all previous determinations that the Pension Plan was tax-qualified.

[10]    The Louisiana code exempts pensions, "simplified employee pension plans, and all other plans qualified under sections 401 or 408 of the Internal Revenue Code," from liability for any debt.  La. Rev. Stat. 13:3881D(1) (emphasis added); La. Rev. Stat. 20:33.  The Texas Property Code exempts pensions, simplified employee pension plans, and other plans "unless the plan . . . does not qualify under the applicable provisions of the Internal Revenue Code of 1986."  Tex. Prop. Code Ann. §

8

distinguish the Louisiana exemption statutes from Texas law on the basis of legislative intent.  As evidence that <u>Youngblood</u> is inapplicable in Louisiana, Hibernia offers the concern voiced by Representative Manuel Fernandez that a debtor might abuse the exemption process.[11]  Hibernia proposes that, notwithstanding the expertise of the IRS and the Texas legislature's deference to that expertise, the Louisiana legislature meant to wrest the interpretation of federal tax law from the IRS in the belief that exemption abuse can be discerned more readily by a state court or a bankruptcy court applying state law.

The argument that Louisiana's lawmakers believed that, in the interest of limiting debtor abuse, it was necessary to displace the IRS with bankruptcy courts is unconvincing. Explicit anti-fraud provisions were included by the Legislature

---

42.0021(a) (emphasis added).


[11]    The minutes of the June 13, 1983 meeting of the Louisiana House Committee on Civil Law and Procedure contain the following entry:

> Representative Fernandez stated that IRA's and Keogh accounts have limitations on the tax benefits, but there are no limitations on the amount of money that can go into the account if you are willing to take the tax consequences.  Representative Fernandez expressed concerns that this situation could be abused; money could be hidden from seizure.

House Comm. on Civil Law and Procedure, 6-13-83, SB No. 324.

in the exemption statutes themselves.[12]  Moreover, shortly after

expressing his concern about debtor abuse, Representative

Fernandez acknowledged that this concern was adequately addressed

by the statutes' tax-qualification requirement;[13] and, as we

stated, in <u>Youngblood</u>:

> [T]he legislature had to know that, in applying [the
> exemption statute], its own courts would be required to
> look to federal tax law to determine whether a plan was
> qualified under the Internal Revenue Code.  The IRS,
> which has been entrusted with the task of implementing
> the Internal Revenue Code, has adopted extensive rules
> and regulations governing income tax in general, and
> the taxability of pension plans in particular.  The IRS
> also has a wealth of experience in the practical
> application of tax laws.

<u>Youngblood</u>, 29 F.3d at 228.  We are not convinced on the basis of

the legislative history offered by Hibernia that the Louisiana

legislature intended for bankruptcy courts to construe federal

---

[12]  In accord with 11 U.S.C. § 727(a)(2), each of
Louisiana's exemption statutes stipulates:  "No contribution
shall be exempt if made less than one calendar year from the date
of filing for bankruptcy, whether voluntary or involuntary, or
less than one calendar year from the date writs of seizure are
filed against such account or plan."  La Rev. Stat. 13:3881D(2)
(emphasis added); La. Rev. Stat. 20:33.

[13]  The minutes of the June 13, 1983 meeting of the
Louisiana House Committee on Civil Law and Procedure contain the
following response to Representative Fernandez's concern about
the possibility of debtor abuse:

> Mr. Edward Glusman representing the Louisiana State Bar
> Association . . . stated that Representative
> Fernandez's problem is taken care of on page 1, line 32
> of the bill [that to be exempt plans must be "qualified
> under sections 401 or 408 of the Internal Revenue
> Code"].  Representative Fernandez agreed.

House Comm. on Civil Law and Procedure, 6-13-83, SB No. 324.

tax law in opposition to an IRS determination.[14]  Whether or not the Louisiana legislature was arguably more preoccupied with debtor abuse than was the Texas legislature is not dispositive.

Second, Hibernia contends that <u>Youngblood</u> is relevant only where the IRS has performed a comprehensive audit.  In <u>Youngblood</u>, after auditing the pension plan, the IRS did not revoke its earlier determination that the plan was tax-qualified.  Similarly, in the instant case, the IRS ultimately audited Brown's Pension Plan and let stand its earlier determination that the plan was tax-qualified.  However, because the IRS did not conduct its audit prior to the filing of Brown's bankruptcy petition, Hibernia attempts to distinguish this case from <u>Youngblood</u>.  The Supreme Court has pointed out that "exempt property is determined 'on the date of the filing of the petition.'"  <u>Owen v. Owen</u>, 500 U.S. 305, 314 n.6 (1991) (quoting

---

[14]     Hibernia contends that bankruptcy courts are capable of interpreting federal tax law.  The issue, however, is whether the Louisiana legislature intended for a bankruptcy court's interpretation of federal tax law to preempt a contrary interpretation of federal tax law advanced by the IRS.  Pension plan qualification under federal tax law is an esoteric and complex area.  The "IRS has established programs . . . designed to correct past defects, to ensure that plans are properly operated in the future, and to impose sanctions less severe than outright disqualification."  <u>Youngblood</u>, 29 F.3d at 228-29 n.4 (quoting Federal Tax Coordinator 2d ¶ T-10590 (1994)).  Particularly because the IRS can make fine distinctions--the IRS might impose no more than a monetary penalty or may excuse entirely an I.R.C. indiscretion that a bankruptcy court might interpret as a disqualifying event, we find it unreasonable to believe that the legislature intended to adopt a scheme that supplants the informed judgment of the IRS with court-construed disqualification.

11 U.S.C. § 522(b)(2)(A)). Hibernia cites Owen and several other cases, including In re Peterson, 106 B.R. 229 (Bankr. D. Mont. 1989), overruled by In re Doss, Nos. 91-41578-007, 91-31042-007, 1991 WL 700518 (Bankr. D. Mont. 1991),[15] to support its contention that, notwithstanding the IRS determination letters to the contrary, the Pension Plan was not tax-qualified for purposes of exemption from Brown's bankruptcy estate. We find this argument unavailing.

The Pension Plan itself was not altered by the 1994 IRS audit. It did not suddenly acquire tax-qualified status coincident with the audit. Nor did Brown's circumstances relative to the plan's qualification change as a result of the IRS audit. Rather, it is self-evident that on the date in 1993 when Brown filed his bankruptcy petition the Pension Plan was already tax-qualified because the IRS had so treated the plan for the better part of 13 years and, thereafter, when it eventually audited the plan for the years 1992 and 1993, the IRS did not revoke its prior determinations.

---

[15] In Peterson, the court stated:

The date of petition is seen as the critical date for several other determinations in a bankruptcy case. For example, it is on that date when the debtor's rights in exempt property are defined, despite a later change in circumstances.

Peterson, 106 B.R. at 230.

12

Furthermore, the determinative issue in <u>Youngblood</u> was whether the IRS had made a determination regarding the qualification of the Youngblood's pension trust, not whether the IRS had conducted a comprehensive audit.  We are not prepared to restrict the ruling in <u>Youngblood</u> to that limited category of pension plans that have been audited by the IRS.  In <u>Youngblood</u>, we stated that "[w]e do not believe that the legislature wanted to adopt a scheme that invites frequent, unseemly, conflicting decisions between the state court or bankruptcy court, and the IRS, such as occurred in this case."  <u>Youngblood</u>, 29 F.2d at 229.  Where the IRS has not audited a pension plan but has determined that the plan is tax-qualified and has treated it as such, the likelihood of conflicting decisions is no less substantial and no less troublesome.

Finally, Hibernia argues that <u>Youngblood</u> should be overruled because it undermines the statutory duties of the bankruptcy court.  Citing 28 U.S.C. § 157,[16] as well as § 505 of the

---

[16]     28 U.S.C. § 157(b) provides in pertinent part:

(b)(1)  Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings under title 11 . . .
    (2)  Core proceedings include . . .
     . . .
     (B)  allowance or disallowance of claims against the estate or exemptions from property of the estate, and . . .

28 U.S.C. § 157(b).

13

Bankruptcy Code,[17] _inter alia_, Hibernia contends that Youngblood improperly limits bankruptcy courts' specific grant of jurisdiction regarding exemption issues. We disagree.

As permitted under the Bankruptcy Code, Louisiana has chosen to "opt out" of the opportunity to allow its debtors to use the "laundry list" of exemptions enumerated under subsection (d) of 11 U.S.C. § 522.[18] Instead, Louisiana has created its own exemption scheme, pursuant to authority recognized by the Bankruptcy Code. 11 U.S.C. § 522(b). What is at issue in this

---

[17] Under the title "Determination of tax liability," the Bankruptcy Code provides in relevant part:

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine--
(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title; or . . .

11 U.S.C. § 505(a).

[18] The Louisiana legislature has provided that only "property and income which is exempt under the laws of the state of Louisiana and under federal laws other than Subsection (d) of Section 522 of [] Title 11 of the United States Code," shall be exempt from the property of a bankruptcy estate. La. Rev. Stat. 13:3881B(1).

14

case is the interpretation of those Louisiana statutes setting forth Louisiana's chosen exemption scheme. The authority of the bankruptcy court to adjudicate tax liability, for example, is of little consequence to the construction of these state statutes, particularly--as in this case--where the IRS has not asserted a claim against the Pension Plan for additional taxes. We do not find the ability of a bankruptcy court to fulfill its statutory duties diminished in any meaningful way by deference to the IRS on matters of tax qualification under a state statute.

Consistent with the reasoning in Youngblood, we conclude that, for purposes of exempting Brown's interest in the bankruptcy estate, the Pension Plan was tax-qualified. The Texas and Louisiana legislatures employed comparable language in drafting their respective exemption statutes, and, as we explained, with regard to Texas law, in Youngblood:

> We are persuaded that the legislature intended for its own courts (or bankruptcy courts applying Texas law) to defer to the IRS in determining whether a retirement plan is "qualified" under the Internal Revenue Code. We see no reason that the legislature would want its courts, which are inexperienced in federal tax matters, to second-guess the IRS in such a complex, specialized area. We find it much more reasonable to assume that the legislature contemplated creating an exemption from seizure for a debtor's retirement funds that could be simply and readily determined by referring to the federal tax treatment of those funds.

Youngblood, 29 F.3d at 229. We are not convinced that the lawmakers of Louisiana were any less interested than those of Texas in providing an exemption that may be applied simply and

15

readily.  The bankruptcy court properly deferred to the IRS's determination that Brown's Pension Plan was tax-qualified. Therefore, it was not error for the bankruptcy court to dismiss Hibernia's objection to Brown's claimed exemption of the plan from the bankruptcy estate.  The district court properly affirmed this dismissal.

## III. CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the district court.